James **CAMPBELL**, et al., Plaintiffs,

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE**, et al., Defendants.

Civ. A. No. 80–0282.

United States District Court, District of Columbia.

June 4, 1981.

Brenda Gibbs-Moore, Cynthia G. Schneider, Kathleen McKee, Jack Mark Stolier, Food Research and Action Center, Inc., Washington, D. C., Lucy Billings, Utah Legal Services, Salt Lake City, Utah, James Dimitri, Neighborhood Legal Services Program, Charleston, S. C., for plaintiffs.

Lewis K. Wise, Brian G. Kennedy, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

This action was originally brought in early 1980 to compel defendants United States Department of Agriculture (USDA), and United States Department of Health, Education and Welfare (HEW, now the Department of Health and Human Services or HHS), and the Secretaries of those Departments to promulgate final regulations implementing the provision of the Food Stamp Act of 1977, P.L. 95–113, 91 Stat. 979, 7 U.S.C. §§ 2011 et seq., requiring establishment of a system whereby eligible Supplemental Security Income (SSI) applicants and recipients could apply for food stamps at their social security offices. Defendant USDA administers the food stamp program, while defendant HHS administers the SSI program. The two individual plaintiffs, James Campbell and Jane Doe, (a fictitious name), allege that they are SSI recipients who are eligible for, and in need of food stamps, but cannot participate in the program because of various practical difficulties, primarily lack of transportation and inability to cope with the long lines at food stamp offices due to health problems and disabilities. They further allege that if a food stamp application could have been processed in conjunction with an SSI review at their social security office, their participation in the food stamp program would have been assured. Plaintiff Utah State Coalition of Senior Citizens (USCSC) is a voluntary membership organization composed of over 4,000 members over age 55, some of whom are alleged to be SSI recipients who are eligible to participate in the food stamp program, but cannot do so because of the lack of certification facilities at the social security office. Plaintiff Utahns Against Hunger (UAH) is alleged to be a voluntary membership organization of participants and potential participants in the SSI and food stamp programs and their representatives.

Food stamps and SSI are two separate programs with potential to assist the low income aged, blind and disabled. The food stamp program is designed to alleviate hunger and malnutrition among low income households by directly increasing their food purchasing power. State agencies implement the program. 7 U.S.C. §§ 2012(h) and 2024(b). The state agencies develop food stamp application forms, accept applications from potentially eligible households, verify information contained in the application, and certify the household for participation in the program. 7 U.S.C. § 2019. The SSI program is authorized under Title XVI of the Social Security Act, P.L. 92–603, 42 U.S.C. §§ 1381 et seq. (1973). It establishes a minimal annual income for the nations' aged, blind and disabled, and is administered directly by the federal government through the Social Security Administration (SSA) of defendant HHS. Current benefits under the SSI program for persons with no other source of income are $238 per month for an individual and $375 for a couple. These amounts will be increased to $264.70 and $397, respectively in July of 1981. If an SSI recipient has other income, he or she will receive an amount such that total income exceeds the amounts set forth above by $20. Thus the total maximum monthly income of an individual SSI recipient at this time is $258.

The Food Stamp Act was reauthorized and amended in 1977, and in 1980 the Act was again amended and the authorization levels for fiscal years 1980 and 1981 were raised. At both times, Congress expressed an intent to continue a program which had been shown to be essential in the reduction of the grave problems of hunger and malnutrition existing in this country, and to increase the participation of those in need,

while eliminating certain categories of less needy households from the program and preventing fraud and abuse. *See* Food Stamp Act of 1977, H.R.Rep. No. 95–464, 95th Cong., 1st Sess. (1977), U.S.Code Cong. & Admin.News 1977, p. 1704, (hereinafter 1977 House Report); Food Stamp Act Amendments of 1980, H.R.Rep. No. 96–788, 96th Cong., 2d Sess. (1980), U.S.Code Cong. & Admin.News 1980, p. 843, (hereinafter 1980 House Report).

In preparation for the 1977 legislation, the House Committee on Agriculture undertook a comprehensive study to collect basic information about how the program actually operates, who participates, what the incomes of participants are, and to determine the nature and extent of administrative problems. The study explored, *inter alia*, why obviously needy groups such as SSI recipients had such a low participation rate in the program (40 to 50%). In 1975 and 1976, the Committee sent questionnaires on the food stamp program to local and state administrators and community groups. The responses indicated that lack of transportation, complex and confusing program rules, restrictive income and resource limitations, and the "welfare stigma" were substantial barriers to participation in the food stamp program by SSI recipients. The Committee was "quite concerned about dealing with the barriers confronting the elderly, blind and disabled [and] therefore included specific provisions to enhance their current unacceptably low participation ..." 1977 House Report at 98, U.S.Code Cong. & Admin.News 1977, p. 2076. These included the provision which is at issue here, which was intended "to lessen the significant burden of forcing SSI recipients to deal with two different offices in order to qualify for SSI and food stamps." This amendment, now 7

U.S.C. § 2020(i)(2), and (j),[1] required the Secretary of Agriculture in conjunction with the Secretary of HEW (now HHS) to prescribe regulations permitting SSI households to apply for food stamps at SSA offices by executing a simplified affidavit there utilizing information contained in the SSA files. "Simplified affidavit" was changed to "simple application" in 1980. (See discussion below.) The purpose of the 1977 amendment was to "accomplish food stamp application and certification for SSI recipients as efficiently and conveniently as possible." House Report at 97–98, U.S. Code Cong. & Admin.News 1977, p. 2076. At the same time, in keeping with the goal of encouraging participation of the needy, while insuring fairness and elimination of the non-needy, the Committee rejected "automatic" eligibility for food stamps for SSI recipients, requiring such households to meet all the eligibility tests (except work registration) applied to other applicants. *Id.*

In 1980, Congress passed legislation increasing authorization for appropriations for the food stamp program for fiscal years 1980 and 1981, in order to assure that over "19 million needy Americans in more than 6 million households are going to continue to be able to buy sufficient food to avoid hunger and malnutrition and the social, economic, and personal harm that accompanies them." 1980 House Report at 12, U.S.Code Cong. & Admin.News 1980, p. 845. At the same time, amendments were included to deter error and punish abuse; to feed the needy and terminate the greedy. *Id.* at 12–13. The Committee found that although there were some abuses requiring correction, the image of people driving Cadillacs to buy expensive steaks with food stamps was a total misconception. The shocking

---

1. 7 U.S.C. § 2020(i)(2) reads: [H]ouseholds in which all members are recipients of supplemental security income shall be permitted to apply for participation in the food stamp program by executing a simple application at the social security office and be certified for eligibility utilizing information contained in the files of the Social Security Administration.

(j) The Secretary in conjunction with the Secretary of Health, Education, and Welfare, is authorized to prescribe regulations permitting applicants for and recipients of social security benefits to apply for food stamps at social security offices and be certified for food stamp eligibility in such offices in order that the application and certification for food stamp assistance may be accomplished as efficiently and conveniently as possible.

reality demonstrates that the average food stamp recipient as of December 1979 had less than 36 cents worth of food stamps to use for each meal, or $32.82 per person per month.

According to a medical study funded by the Field Foundation, diseases of malnutrition evident among poor and hungry American children in 1967 had greatly diminished by 1979. In the view of the authors of the study, the dramatic difference found, including a 33% decline in infant mortality, and greater than 50% reduction in infant deaths from causes related directly to poverty and malnutrition, was primarily a result of the food stamp program. The report concluded that the food stamp program "is the most valuable health dollar spent by the Federal Government." 1980 House Report at 14, U.S.Code Cong. & Admin.News 1980, p. 847.

The provision which is the subject of this lawsuit was amended in 1980. The Committee reaffirmed that the purpose of the provision was to "lessen the significant burden of forcing SSI recipients to deal with two different offices in order to qualify for both programs." 1980 House Report at 133, U.S.Code Cong. & Admin.News 1980, p. 966. However, it reported that unfortunately a shortened and simplified affidavit that could be used nationwide by SSA for joint application for both programs could not be worked out, because much of the information needed to determine food stamp eligibility is not needed to determine SSI eligibility, there being considerable differences in income and asset definitions and exclusions in the two programs. Therefore, the language of the provision was changed from "simple affidavit" to "simple application" so that state agencies could use the national food stamp application form or a comparable state form no more lengthy or complex. The Committee stated that "[t]here will be no greater burden upon clients under this approach as long as the SSI caseworker fills out that application form during the SSI interview and then forwards the form to the appropriate food stamp office." *Id.* at 134, U.S.Code Cong. & Admin.News 1980, p. 967.

At the time this lawsuit was filed, more than two years after enactment of the provision mandating regulations to allow food stamp applications by SSI participants at SSA offices, no final regulations had been issued. The primary aim of plaintiffs at that time was to obtain the issuance of those regulations. During the progress of this case, on April 22, 1980, defendants issued final regulations (45 Fed.Reg. 27246 *et seq.*), in connection with settlement negotiations in a similar case earlier instituted, *Action Alliance of Senior Citizens, Inc. v. Bergland,* Civil Action No. 79–2822, E.D.Pa. The consent order in that case provided for implementation of the regulations on or before August 1, 1980. Thus, the issues originally raised here become moot. Nonetheless, by the Order of June 6, 1980, this Court allowed the plaintiffs to file a further dispositive motion raising issues within the scope of their complaint. Plaintiffs subsequently filed a motion for summary judgment, alleging that defendants' regulations failed to comply with the Food Stamp Act of 1977 and congressional intentions thereunder. Specifically, plaintiffs challenge two aspects of the regulations. First, application for recertification (required at intervals of one year or less in order to retain entitlement to receive food stamps), as opposed to initial certification, are only provided at the social security office when a household member's visit to the SSA office *for a redetermination of SSI eligibility* coincides with the period for making an application for recertification for food stamps. 7 C.F.R. 273.2(k); 45 Fed.Reg. 27432. In other cases, SSI recipients must deal with the food stamp office for recertification. Since SSI redeterminations are only occasional, and are not timed to coincide with food stamp recertification, recertification at the social security office would be the exception rather than the rule under the regulations. Plaintiffs contend that the failure to provide for recertification at social security offices is a violation of the clear language of the statute and of congressional intent. Defendants on the other hand argue that the statutory language does not require re-

certifications, as opposed to initial certifications, to take place at SSA offices, and that the system adopted by defendants fulfills congressional intent.

Plaintiffs' second objection to the regulations involves expedited processing under 7 U.S.C. § 2020(e)(9) for SSI households which apply for initial food stamp certification at the social security office. The Act provides that destitute households in immediate need because of no income are to receive coupons on an expedited basis. The regulations implementing this section, 7 C.F.R. § 273.2(i), provide that households which are found eligible will have their food stamps mailed to them by the second working day after the application was filed, or may pick them up at the food stamp office no later than the start of business of the third working day following the date the application was filed. The new regulations allow the actual processing of food stamp applications to take place at the food stamp office even when they are received by the SSA office. (The states may choose this procedure, or alternatively, may "outstation" food stamp workers in the SSA office to process applications there). 7 C.F.R. § 273.2(k)(1); 45 Fed.Reg. 27432. When an application entitled to receive expedited treatment is filed at the SSA office and will be processed at the food stamp office, the deadlines for issuance of stamps begin to run from the time the application is received at the correct food stamp office. 7 C.F.R. § 273.2(k)(1)(i)(I); 45 Fed.Reg. 25432–33. Accordingly, applicants for expedited processing who file at social security offices are subject to a delay in receiving their food stamps, consisting of the time it takes for the application to go from the social security office to the food stamp office. Plaintiffs claim that the delay may be one week or longer, and that the procedure provides the elderly, blind and disabled SSI recipients with considerably less protection from expedited food stamp assistance than other households. Plaintiffs argue that the statutory language providing that SSI recipients applying for food stamps at the social security office "be certified for eligibility utilizing information contained in the files of the Social Security Adminstration . . .", 7 U.S.C. § 2020(i)(2), requires that the eligibility determination be made at the social security office, thereby eliminating any delay inherent in the transmission of the application to the food stamp office. In a subsequent filing, plaintiffs suggest that the initial determination be made in the social security office, followed by a confirming telephone call to the food stamp office as to the household's eligibility for food stamps on an expedited basis. Food stamps would then be issued by the food stamp office based on information supplied by the SSA worker. Further processing of the application would continue as for non-expedited applications. Points and Authorities in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment at 3–4. (Limited verification is required to issue stamps on an expedited basis. The full investigation applied to non-expedited applications takes place after the emergency issuance of food stamps). Defendants counter that the expedited processing regulations are reasonable and in accordance with law. The SSI household has the option of applying at the food stamp office if time is of the essence. The regulations require that the SSA inform households which appear to meet the criteria for expedited service that benefits may be issued a few days sooner if the household applies directly at the food stamp office. 7 C.F.R. § 273.2(k)(1)(H); 45 Fed.Reg. 27432. Where applications are made at the social security office, the regulations require that the application be forwarded to the designated food stamp office within one working day. 7 C.F.R. 273.2(k)(1)(i)(B), 45 Fed.Reg. 27432. The mail normally takes no more than one day. Clearly, expedited processing would be accomplished within the one week suggested by the 1977 House Report. (There is no statutorily imposed time frame for expedited processing). Defendants further argue that if the same time limitations were applied to expedited applications forwarded from SSA offices as apply to those submitted directly to food stamp offices, the food stamp office would have to begin

processing the application before it was ever received. This would run counter to the congressional intent to reduce error, or fraud, and make the program accountable. Finally, defendants contend that the legislative history of the 1980 amendments to the Food Stamp Act demonstrate that Congress approves the practice of processing applications received at the SSA office at the food stamp office, and does not require processing at the SSA office based on information contained in SSA files.

Plaintiffs claim that both the failure to provide recertification for food stamps at the social security office and the delay permitted in the expedited processing of food stamp applications of those who apply at the social security office run counter to equal protection of the law and violate the United States Constitution.

Defendants responded to plaintiffs' motion for summary judgment with a combined motion for summary judgment and opposition to plaintiffs' motion for summary judgment in July of 1980. In January 1981, the defendants filed a motion to dismiss for want of prosecution, or, in the alternative, that defendants' motion for summary judgment be treated as conceded, and renewed their motion for summary judgment. The basic ground for this motion is that plaintiffs never responded to defendants' motion for summary judgment. In response, plaintiffs filed an opposition to defendants' motion, and moved for leave to file points and authorities in opposition to defendants' motion for summary judgment. Plaintiffs' position is that defendants' motion for summary judgment was a direct response to plaintiffs' motion for summary judgment, and plaintiffs had regarded the issues as joined on cross motions for summary judgment and ripe for adjudication by the Court. In the event that the Court finds that there was a violation of Local Rule 1–9(d) (requiring oppositions to motions to be filed within 10 days, or the Court may treat that motion as conceded), plaintiffs ask leave to file points and authorities in opposition to defendants' motion for summary judgment.

The Court finds that the issues were joined for adjudication at the time defendants filed their motion for summary judgment and opposition to plaintiffs' motion for summary judgment. The plaintiffs were not required to respond further. However, they were entitled to do so if they so chose. For record clarification, plaintiffs are given leave to file their points and authorities, earlier attached but not formally filed, in support of their opposition to defendants' motion for summary judgment. This filing has been considered in the decision on the merits made here.

Defendants have also filed a motion to vacate the order of January 29, 1980 (providing that plaintiff Jane Doe be allowed to remain anonymous), and a motion for leave to file affidavit in supplemental support of defendants' motion for summary judgment and in opposition to plaintiffs' motion for summary judgment. The filing will be permitted and is considered in this decision. In support of the first motion, defendants argue that the concealment of plaintiff's true identity deprives them of their rights to know against whom they are litigating, to determine whether the anonymous allegations are based on fact, to gather contrary evidence, and to determine who is precluded from relitigating issues decided in their favor. The order in question, (per Pratt, J.) provides that Jane Doe's name and address, having been given to the Clerk of Court, "will be made available to Defendants upon presentation of necessity." Defendants contend that their right to know the litigant's identity should not be conditioned upon a showing of necessity. Plaintiff Doe's identity has been concealed to protect sensitive personal information and to shield her from feared abuse and harrassment from her neighbors, the media, and the public. Judge Pratt's order, allowing disclosure upon a showing of necessity by defendants, properly balances the interests at stake here. Plaintiff's identity will not be revealed unless defendants make a showing of necessity. As explained below, they cannot do so in the circumstances of this case.

Since the issues in this case are unquestionably legal in nature, turning upon an interpretation of the Food Stamp Act as amended, the only need which defendants could have for further information concerning Jane Doe is to challenge her standing to bring this lawsuit. It appears from defendants' affidavit in supplemental support of their motion for summary judgment that defendants do in fact wish to raise questions as to whether any plaintiff has standing to maintain this action. Defendants' supplemental affidavit, by Harris Factor, the Deputy Director of the Office of Regulations of the SSA, alleges that as of February 17, 1981, more than six months after social security offices began accepting food stamp applications, plaintiff Campbell still had not applied. Accordingly, defendants argue, plaintiff is not affected by the challenged rules regarding recertification. There is no allegation that he would be eligible for expedited processing, and in any event his failure to act for six months indicates that a few days is not of the essence to him. Defendants further claim that the organizational plaintiffs have not alleged or proven that any of their members are being injured by defendants' policies. Defendants contend they cannot determine whether a case or controversy exists between themselves and plaintiff Doe because of her anonymous status. However, as the Court finds that the organizational plaintiffs have standing to bring this suit, a determination regarding plaintiff Doe's standing is unnecessary. Plaintiffs seek declaratory and injunctive relief which would affect all of them, and all other SSI recipients eligible for food stamps, identically, and therefore it is inconsequential whether all plaintiffs have standing as long as any plaintiff has standing to bring this lawsuit. The effect of a decision in this case would be precisely the same for defendants and for plaintiffs whether one or more than one plaintiff is found to have standing. The organizational plaintiffs have alleged that some of their members are SSI recipients eligible to receive food stamps who are harmed by their inability to apply for food stamps at their social security offices. This showing is sufficient to support those plaintiffs' standing to challenge defendants' regulations. It would be superfluous and a waste of judicial resources to inquire further into the standing of plaintiffs Campbell and Doe. As standing is the only issue to which plaintiff Doe's identity is relevant, and as that issue has been decided without requiring reference to plaintiff Doe, defendants' motion to vacate order filed January 29, 1980 will be denied.

The case is now in a posture where the merits may be reached.

1. *Expedited Treatment*

█ Plaintiffs assert that defendants' regulations concerning the expedited processing of food stamp applications submitted at social security offices violate both the Food Stamp Act, 7 U.S.C. §§ 2020(e)(9) and 2020(i)(2), and equal protection, and hence the due process clause of the Fifth Amendment to the Constitution. As previously discussed, the challenged regulations allow the time deadlines for the issuance of food stamps to destitute households to begin to run from the time the application reaches the food stamp office. Therefore, households which file at the social security office will receive their food stamps a few days later than those which file at the food stamp office. It is unquestioned that Congress imposed no deadlines for expedited processing of food stamp applications. The 2 to 3 day requirement was self-imposed by defendant HHS in its implementing regulations. The only manifestation of congressional intent in this regard is the statement in the 1977 House Report to the effect that "an eligible household should be able to be certified and issued its allotment within a few days, but certainly less than one week." 1977 House Report at 271, U.S.Code Cong. & Admin.News 1977, p. 2206. The new regulations would involve a 2 to 3 day delay, (one day for the SSA office to receive the application and send it out, 7 C.F.R. 273(k)(1)(i)(B), 45 Fed.Reg. 27432, and one or two days for the mail), or a total of 4 to 6 days. Plaintiffs' estimate of one week or more delay assumes slow mail delivery and possible initial forwarding to the wrong

food stamp office. Nevertheless, it is logical to assume that in the great majority of cases, applicants will receive their food stamps in less than a week, as envisioned by Congress. The time delay in itself then is not a violation of the statute.

Plaintiffs also assert that the procedure is a violation of the legislative intent to have such applications processed at the social security office, using information in the social security files. 7 U.S.C. § 2020(i)(2). The language of that provision, though, is ambiguous, merely stating that eligible SSI households shall be permitted to apply for participation in the food stamp program at the social security office and "be certified for eligibility utilizing information contained in files of the Social Security Administration ..." It is not apparent from the statutory language that defendants are required to process applications using *only* information contained in SSA files, and the subsequent legislative history makes it clear that this is not the case. The 1980 House Report sharply reflects congressional recognition that food stamp applications require information not relevant to SSI determinations, and that food stamp applications would be forwarded from the SSA office to the food stamp office for processing. 1980 House Report at 133–34; see discussion *supra* at 4–5. It is questionable, however, whether Congress was considering expedited processing when it recognized that the different requirements for food stamp and SSI eligibility require that a food stamp worker trained in the requirements of that program process food stamp applications, and that mailing the applications to a food stamp office is an efficient and acceptable means to accomplish that purpose. Since the purpose of expedited processing is to serve destitute families in immediate need of assistance, the normal verification procedures required under the food stamp program are dispensed with until after stamps are initially issued. Initial certification and issuance require only verification of identity and residency. Although income verification will be attempted, it need not be completed should this delay issuance of stamps within the time constraints imposed

by regulation. 7 C.F.R. § 273.2(i)(4)(i). The procedure suggested by plaintiffs, that is, having the limited verification required performed by a social security worker and telephoned in to the food stamp office, which would then certify and issue stamps, with further processing on the same basis as other applications, appears most feasible and reasonable and in keeping with legislative intent. It would not sacrifice the accountability of the program, while eliminating the time delay involved in forwarding applications. Nonetheless, a Court may not overturn an agency determination merely because it finds that there is a preferable method. A Court cannot substitute its judgment for that of the agency unless the agency has violated its legislative mandate. Here, there appears to be no legislative mandate that would prevent defendants from creating a procedure which would result in expedited applications filed at social security offices being completed a few days later than those filed at food stamp offices. Although congressional intent as to the processing of expedited applications at social security, as opposed to food stamp, offices is murky, there is no indication that Congress intended to prohibit the forwarding of expedited applications from SSA to the food stamp office.

Defendants' regulations regarding expedited processing of food stamp applications submitted at social security offices are not in violation of the Food Stamp Act.

■ Finally, plaintiffs claim that the expedited processing regulations violate equal protection of the law. They argue that two classes of persons are created: those indigent households which apply for expedited treatment at the food stamp office, and have their applications processed within 2 to 3 days; and those indigent SSI households which apply at their social security offices and which will not have their applications processed within the same time frame. Plaintiffs recognize that because these classifications do not involve a suspect class or a fundamental right, that the standard of review is whether they are rationally related to some legitimate governmental

interest. Plaintiffs insist, incorrectly, that the regulations discriminate against SSI recipients who apply for expedited treatment at their social security offices without any legitimate purpose. The regulations here do not discriminate against SSI recipients, but merely give them another option, namely, applying for food stamps at their social security offices, which is not available to other food stamp applicants. Alternatively, SSI recipients have an option to apply for food stamps at a food stamp office and receive the same treatment as all other applicants. There is no basis for an equal protection claim.

Summary judgment will be granted in favor of defendant on the issue of the expedited treatment regulations.

### 2. Recertification

Defendants' regulations provide for application and certification for food stamps at social security offices only for households not participating in the food stamp program, which have not applied for food stamps in the thirty preceding days, and do not have applications pending. 7 C.F.R. § 273.2(k); 45 Fed.Reg. 27432. That is, only initial applications for food stamps, as opposed to recertification applications, will be accepted at SSA offices. As discussed above, recertification for food stamps could only occur at the social security office when the time for recertification coincides with a household member's redetermination interview for SSI benefits, which would be an unusual circumstance. Plaintiffs argue that this aspect of the regulations violate the clear language of 7 U.S.C. § 2020(i)(2), providing that SSI households be permitted "to apply for participation in the food stamp program by executing a simple application at the social security office and be certified for eligibility utilizing information contained in the files of the Social Security Administration." Nothing in that language, plaintiffs assert, allows defendants to exclude applications for recertification from its scope. Congressional intent to increase participation of needy SSI recipients in the food stamp program by lessening the burden of having to deal with two separate offices cannot be met if SSI recipients are forced to deal with the food stamp office in order to remain in the program after they are initially certified. Defendants argue on the other hand that certification and recertification are different procedures, and that the burden would be on plaintiffs to show that the language of 7 U.S.C. § 2020(i)(2) was intended to include recertifications. Defendants also make what amounts to an administrative infeasibility argument. Food stamp recertification is required to be performed within 15 days. The time period is shorter than for initial certification (30 days) because recertification can be accomplished by updating the file created by the initial certification and any previous recertifications. This time limit might not be possible to meet because of the delay in transmitting applications from SSA to the state food stamp office. Avoiding the transmission time by performing recertifications at the social security office would also be inefficient, since the applicant's file would not be there. Without the file, SSA would have to do as complete an investigation as if it were an initial certification. Defendants aver that having a duplicate set of files at SSA would be costly and inefficient, especially since the two offices would have to continually exchange information in order to keep both sets up to date. Moreover, SSA has no authority to increase its personnel ceiling to perform recertifications. Allowing food stamp-only interviews to take place in SSA offices would increase SSA's workload, resulting in a deterioration in service to SSA clientele.

In addition to the statutory interpretation and infeasibility arguments, defendants allege that their regulatory scheme serves SSI applicants for food stamps in the manner intended by Congress. Defendants' regulations allow waiver of food stamp office interviews for certification and recertification if the household is unable to appoint an authorized representative and has no household members able to come to the food stamp office because they are 65 years of age or older or are mentally or physically handicapped. The state office may also

waive interviews on a case by case basis based upon transportation difficulties or similar hardships. In these cases the state agency has the option of conducting a telephone interview or making a home visit. 7 C.F.R. § 273.2(e)(1) and (2). Therefore, defendants argue, congressional intent to remove the burden from SSI recipients of visiting food stamp offices has been fulfilled.

First, an intent to distinguish certification and recertification cannot be found in the language of 7 U.S.C. § 2020(i)(2) and (j) or in the legislative history. There is no reason to believe that "certification for eligibility" was meant to exclude recertification, which is required for continued eligibility, especially when the expressed intent of Congress was to increase participation of SSI recipients in the food stamp program by removing the burden of having to deal with two separate offices. 1977 House Report at 98, quoted at p. 3, *supra.*

■ Second, just as the Court cannot substitute its judgment for that of the defendant Departments unless there is a violation of defendants' statutory mandate, defendants cannot substitute their judgment for that of Congress, and choose not to implement their statutory mandate because they believe it is administratively inefficient or infeasible. Defendants cannot decide not to allow food stamp recertifications at social security offices because of the practical problems they perceive in doing so. If in fact Congress has set defendants with an impossible task, their remedy is with Congress and not this Court.

Defendants' final argument, that telephone interviews or home visits by the food stamp office accomplish what Congress intended to accomplish by allowing food stamp certification at social security offices, namely preventing SSI recipients from having to visit food stamp offices, must also be rejected. Although this system would seem to leave little incentive for SSI recipients to apply for recertification at social security offices, that option has been mandated by Congress and must be provided. Congress found that the difficulties inherent in dealing with two separate offices deterred some of the elderly and disabled SSI recipients from participation in the food stamp program, and sought to correct this problem. It would seem a simple matter to inform SSI households that recertification for food stamps could be accomplished by a telephone interview or home visit with a food stamp worker, or alternatively by an interview at the social security office. If the applicant for some reason prefers to be interviewed at the SSI office, that service must be provided at the social security office, either by an "outstationed" food stamp worker or an SSA employee trained to perform that function. Since that function is already performed in the social security office in the case of SSI recipients whose redetermination for SSI coincides with their recertification period for food stamps, it appears that the problems of meeting time deadlines with the necessity of either forwarding applications or maintaining duplicative files are not insurmountable. Allowing recertifications of a larger class of SSI recipients at the social security office would undisputedly increase the workload of SSA, and perhaps create other practical difficulties. However, the numbers involved are likely to be small, when given the option of a home or telephone interview with a food stamp worker as an alternative. It does not appear to the Court that the practical difficulties of conforming to the legislative mandate are overwhelming. In any case, if they are, the remedy lies with Congress.

As this issue has been decided on the basis of violation of statute, plaintiffs' equal protection claim on this issue need not be reached.

Summary judgment will be granted in favor of plaintiffs on the issue of the provision of recertification application by SSI recipients or applicants at social security offices.

An appropriate judgment accompanies this opinion.

## JUDGMENT

It is this 4th day of June, 1981, hereby

ORDERED, that defendants' motion to dismiss for want of prosecution, or, in the alternative, that defendants' motion be treated as conceded, be, and it hereby is, denied, and it is

FURTHER ORDERED, that plaintiffs' motion for leave to file points and authorities in opposition to defendants' motion for summary judgment be, and it hereby is, granted, and it is

FURTHER ORDERED, that defendants' motion to vacate order filed January 29, 1980 be, and it hereby is, denied, and it is

FURTHER ORDERED, that defendants' motion for leave to file affidavit in supplemental support of defendants' motion for summary judgment and in opposition to plaintiffs' motion for summary judgment be, and it hereby is, granted, and it is

FURTHER ORDERED, that partial summary judgment be entered in favor of defendants United States Department of Agriculture, John R. Block, Secretary, United States Department of Agriculture, United States Department of Health and Human Services, and Richard S. Schweiker, Secretary, United States Department of Health and Human Services and against plaintiffs James Campbell, Jane Doe, Utah State Coalition of Senior Citizens and Utahns Against Hunger as to plaintiffs' claim that defendants' regulations regarding the processing of expedited applications for participation in the food stamp program which are filed at social security offices (7 C.F.R. § 273.-2(K)(1)(i)(I); 45 Fed.Reg. 27432–33) are in violation of the Food Stamp Act of 1977, as amended, 7 U.S.C. §§ 2011 *et seq.* or of equal protection of the laws under the Constitution of the United States, and it is

FURTHER ORDERED, that partial summary judgment be entered in favor of plaintiffs James Campbell, Jane Doe, Utah State Coalition of Senior Citizens and Utahns Against Hunger and against defendants United States Department of Agriculture, John R. Block, Secretary, United States Department of Agriculture, United States Department of Health and Human Services, and Richard S. Schweiker, Secretary, United States Department of Health

and Human Services; as to plaintiffs' claim that defendants' regulations limiting food stamp recertifications available to Supplemental Security Income applicants and recipients at social security offices (7 C.F.R. § 273.2(K); 45 Fed.Reg. 27432) are in violation of the Food Stamp Act of 1977, as amended, 7 U.S.C. §§ 2011 *et seq.*; specifically, said regulations violate 7 U.S.C. § 2020(i)(2) and (j). And it is

FURTHER ORDERED, that defendants shall promulgate and implement a system by which Supplemental Security Income households may file recertification applications for the food stamp program at their Social Security Administration offices. Final regulations shall be issued for publication in the *Federal Register* within 30 days of this date. At the time of publication, defendants shall provide all state food stamp agencies and social security offices with the information and assistance necessary to implement the requirements of such regulations. Such final regulations shall provide that Supplemental Security Income households be permitted to file recertification applications at their social security offices no later than 20 days after the publication of the final regulations.