**UNITED STATES of America, Plaintiff,**

v.

**L.J. GARNER and Tommie N. Garner, Defendants.**

**Civ. A. No. GC 80–53–WK–O.**

United States District Court, N.D. Mississippi, Greenville Division.

July 1, 1983.

Falton O. Mason, Jr., Asst. U.S. Atty., Oxford, Miss., for plaintiff.

Isaiah Madison, North Mississippi Rural Legal Services, Greenville, Miss., for defendants.

MEMORANDUM OPINION

KEADY, District Judge.

In this action involving a Farmers Home Administration (FmHA) loan, plaintiff, United States, sues defendants-borrowers, L.J. and Tommie N. Garner, husband and wife, for foreclosure and possession of their residential property. Following a hearing on March 4, 1983, the Court reserved final ruling pending submission of briefs on the single question of FmHA loan refinancing under 42 U.S.C. § 1471(a) of the Housing Act of 1949.[1]

---

1. On April 2, 1981, the court set aside nonjudi-
cial foreclosure of FmHA's deed of trust on the

Defendants claim they are entitled to have their delinquent rural housing loan considered for refinancing under § 1471(a) and, until this is accomplished, foreclosure may not occur. Plaintiff argues that refinancing of FmHA loans is not allowed by the applicable Department of Agriculture regulations. The important question before this court is one of first impression: whether the regulation that prohibits FmHA loan refinancing is valid.

42 U.S.C. § 1471(a) provides in pertinent part:

(a) The Secretary of Agriculture (hereinafter referred to as the "Secretary") is *authorized,* subject to the terms and conditions of this title, to extend financial assistance, through the Farmers Home Administration ... (4) to an owner described in clause (1), (2), or (3) for *refinancing* indebtedness which—

(A) was incurred for an eligible purpose described in such clause,

(B)(i) if not refinanced, is likely to result (because of circumstances beyond the control of the applicant) at an early date in the loss of the applicant's necessary dwelling or essential farm service buildings, or (ii) if combined (in the case of a dwelling that the Secretary finds not to be decent, safe, and sanitary) with a loan for improvement, rehabilitation, or repairs and not refinanced, is likely to result in the applicant's continuing to be deprived of a decent, safe, and sanitary dwelling. (emphasis added)

*Id.* The present language of § 1471(a) was inserted by the Housing and Community Development Amendments of 1979, Pub.L. No. 96–153, 93 Stat. 1101. These amendments deleted old subsection (c) which prohibited refinancing of indebtedness less than five years old and revised and redesignated subsection (B). Pursuant to these amendments, the Secretary of Agriculture promulgated regulations that control qualifying conditions under 42 U.S.C. § 1471(a). The regulation here applicable is found at 7 C.F.R. § 1944.22(a) and provides simply that "[r]efinancing of *FmHA* debts is not authorized," 7 C.F.R. § 1944.22(a) (1982) (emphasis added), while providing for refinancing *non-FmHA* debts under specified conditions, § 1944.22(b). The court must, therefore, determine whether this regulation, which exempts non-FmHA debt refinancing from the blanket prohibition, was reasonably adopted by the Secretary of Agriculture or whether he lacked statutory authority to bar refinancing of FmHA debts. *See, e.g., Knebel v. Hein,* 429 U.S. 288, 296–97, 97 S.Ct. 549, 554–55, 50 L.Ed.2d, 485, 493 (1977) (regulations must be reasonably adopted); *Campbell v. United States Dept. of Agriculture,* 515 F.Supp. 1239, 1249 (D.D.C.1981) (regulations may not decline to effectuate statutory policy).

To answer this question, the Court must first examine the language of the statute. Congress chose to use the term "authorized" when granting the Secretary of Agriculture jurisdiction over FmHA loans, including their refinancing. Plaintiff contends this phraseology granted the Secretary discretionary or permissive power to act rather than an obligation to do so. While the Court agrees that "authorize"

ground that the government failed to prove that the Garners, in executing the deed of trust, made a voluntary, informed and intelligent waiver of their due process rights as required by *United States v. White,* 429 F.Supp. 1245 (N.D.Miss.1977). Formal judgment to this effect was not entered until June 12, 1981, which enjoined the government from proceeding with judicial foreclosure for a period of ninety days to allow the Garners an opportunity to cure their default. After the government dismissed its appeal from this order, the case was reset for hearing in the district court on March 4, 1983. In an informal bench ruling, the court found that ample notice had been given to the borrowers in order to satisfy due process rights prior to the request for judicial foreclosure; the court reiterated its earlier finding of fact that FmHA acted in accordance with applicable regulations in concluding that the borrowers did not qualify for moratorium relief, and held that any complaint of the borrowers with that decision should have been administratively prosecuted through FmHA channels and not in this court. The borrowers' remaining contention that they should nevertheless be considered for refinancing was taken under advisement with briefs requested on the issue dealt with in this opinion.

usually connotes discretion, *United States v. Maryland,* 471 F.Supp. 1030, 1038 (D.Md. 1978), the use of discretionary language "is not determinative of whether Congress intended to impose a mandatory duty upon the Secretary." *Rocky Ford Housing Authority v. United States Department of Agriculture,* 427 F.Supp. 118, 127 (D.D.C.1977). What is important is whether Congress can fairly be said to have intended "to confer a discretionary power or to impose an imperative duty." *Thompson v. Clifford,* 408 F.2d 154, 158 (3d Cir.1968), *quoting United States ex rel. Siegel v. Thoman,* 156 U.S. 353, 359, 15 S.Ct. 378, 380, 39 L.Ed. 450 (1895). For this reason, congressional intent is of the utmost importance in resolving the issue. To divine that intent, we must turn to the legislative history of the Housing Act.

Congress has expressly declared the purpose of the FmHA loan program is to provide "a decent, safe, and sanitary dwelling" to individuals residing in rural areas of the United States. 42 U.S.C. § 1471(a). In addition, the courts have consistently interpreted the various sections of the Housing Act to effectuate that purpose. *See, e.g., United States v. White,* 429 F.Supp. 1245, 1253 (N.D.Miss.1977) (FmHA must exercise duties consistent with policy to realize goal of decent home and suitable living environment for every American family); *Rocky Ford Housing Authority v. United States Department of Agriculture,* 427 F.Supp. 118, 131 (D.D.C.1977) (ambiguity in legislative history of Housing Act to be interpreted in favor of effectuating policy); *Pealo v. Farmers Home Administration,* 361 F.Supp. 1320, 1323–24 (D.D.C.1973) (intent of Congress interpreted in favor of national policy of decent home and suitable living environment).

When Congress enacted the Housing and Community Development Amendments of 1979, it made clear that refinancing of FmHA loans was to be allowed. In House Report number 96–154 which accompanied the amendments, the Committee on Banking, Finance and Urban Affairs stated:

With limited funds to meet the housing needs of rural families, the Committee does not desire that refinancing be indiscriminately permitted.... However, when through no fault of their own, rural homeowners stand to lose their homes, and in turn, would be forced to occupy substandard housing, *the Committee believes that FmHA should permit such owners to refinance their homes.* The Committee recognizes that this places a difficult burden on FmHA and urges that it implement the new financing provisions cautiously. (emphasis added)

H.Rep. No. 96–154, 96th Cong., 1st Sess. 44, *reprinted in* [1979] U.S.Code Cong. & Ad. News 2317, 2360. It is clear the House Committee on Banking, Finance and Urban Affairs intended refinancing to be allowed in at least some instances when to do otherwise would result in the homeowner losing his home. Similarly, the Joint Explanatory Statement of the Committee of Conference, accompanying the final version of the 1979 amendments, provides:

The conferees, in approving the new refinancing authority, *expect the Secretary to use the authority* to assist rural home owners threatened with the loss of their homes or continuing housing deprivation under certain circumstances. At the same time, the conferees desire the Secretary to use the new authority prudently and in a manner that does not encourage borrowers to relax in managing their finances and fully meeting their loan obligations.

*The conferees intend that the Secretary should provide applicants refinancing assistance* where, because of illness, loss of employment or income resulting from a local or national economic downturn, or such other similar events or unforeseen circumstances, the applicant might lose the dwelling.

*The conferees also expect the Secretary not to deny refinancing assistance to an applicant because his or her dwelling is not found to be dilapidated or uninhabitable.* A deteriorating dwelling with major deficiencies in decent, safe and sanitary

standards should, if otherwise eligible, be permitted to be refinanced.

H.Conf.Rep. No. 96–706, 96th Cong., 1st Sess. 96, *reprinted in* [1979] U.S.Code Cong. & Ad.News 2402, 2455. It is difficult to imagine a clearer and more concise expression of legislative intent. Although § 1471(a) contains the usually permissive word "authorized," it is obvious Congress intended the Secretary of Agriculture to allow refinancing of FmHA indebtedness but to adopt strict controls. This procedure would avoid abuse while fulfilling the national housing policy of securing a decent home and suitable living environment for all American families. The deletion in the 1979 amendments of the section prohibiting refinancing of FmHA loans less than five years old underscores congressional intent to allow refinancing. In this respect, Congress made it possible to refinance previously unqualified FmHA indebtedness. *See* H.Conf.Rep. No. 96–706 at 96, U.S.Code Cong. & Ad.News at 2455 (bill deletes provision banning refinancing of FmHA loans less than five years old).

The government argues that the regulation represents a proper exercise of discretion by the Secretary, since his determination to bar refinancing of FmHA debts was based upon the availability of other servicing tools such as interest credits and reamortization of assumed debt (42 U.S.C. § 1471, 7 C.F.R. § 1944.34), and moratorium (42 U.S.C. § 1475, 7 C.F.R. 1951.313), which would enable FmHA rural housing borrowers eventually to repay their FmHA loans, thereby rendering refinancing an unnecessary duplication. Because of these considerations, the government would have us conclude that the Secretary has acted with caution and prudence consistent with congressional intent in adopting the challenged regulation. The Court cannot accept this argument. Congress was well aware of the other entitlements extended to FmHA borrowers, but determined to provide still another tool for the Secretary to use, by allowing refinancing of FmHA loans subject to proper regulatory control, in a comprehensive endeavor to effectuate national housing goals for rural home bor-

rowers. It is undeniable that Congress has shown a solicitous concern in enacting legislation to promote farm housing. What Congress has provided in this instance may not be rejected by the Secretary as unwise policy. Moreover, the Secretary's demarcation between FmHA debts, as to which refinancing is precluded, and non-FmHA debts, as to which refinancing is permitted, is out of harmony with congressional intent.

Since it is clear from the legislative history that Congress has imposed an imperative duty, and not an unfettered discretionary power, upon the Secretary of Agriculture to allow FmHA refinancing in certain circumstances, the Court finds the regulation codified at 7 C.F.R. § 1944.22(a) (1982) was not reasonably adopted, conflicts with the act of Congress under which it was promulgated, and cannot stand.

This is not to say that the Secretary cannot issue regulations which restrict the use of the refinancing device. Instead, the references in the Committee's report are replete with illustrative situations in which the Secretary would not be expected to extend refinancing to FmHA borrowers. But, in light of the statutory language and congressional intent, the Secretary may not completely prohibit refinancing of FmHA debts. For this reason, defendants are entitled to be considered for refinancing under such appropriate guidelines or standards as the Secretary may establish; until this is done in accordance with law, the government may not proceed with foreclosure on the property of defendants.

Let an order issue accordingly.