UNITED STATES of America,
Plaintiff-Appellant,

v.

L.J. GARNER and Tommie N. Garner,
Defendants-Appellees.

No. 83–4531.

United States Court of Appeals,
Fifth Circuit.

Jan. 3, 1985.

E. Grady Jolly, Circuit Judge, filed dis-
senting opinion.

Glen H. Davidson, U.S. Atty., Oxford, Miss., Robert S. Greenspan, Susan Sleater, Peter R. Maier, Dept. of Justice, Civil Div., Washington, D.C., for plaintiff-appellant.

Isaiah Madison, Greenville, Miss., Ben T. Cole, II, Oxford, Miss., for defendants-appellees.

David Madway, Gideon Anders, Berkeley, Cal., for amicus curiae National Housing Law Project.

Before WISDOM, RANDALL and JOLLY, Circuit Judges.

RANDALL, Circuit Judge:

The United States appeals from an order of the district court barring the govern-

ment from proceeding with foreclosure on the property of L.J. and Tommie N. Garner until (1) the Secretary of Agriculture issues regulations providing for refinancing by the Farmers Home Administration of its own loans at least under certain unspecified circumstances and (2) the Farmers Home Administration considers whether its mortgage loan to the Garners qualifies for refinancing under such regulations. Because we find that the district court's order is not subject to interlocutory review, we dismiss this appeal for lack of subject matter jurisdiction.

## I. FACTUAL AND PROCEDURAL HISTORY.

On March 29, 1979, the Farmers Home Administration (FmHA) loaned L.J. and Tommie N. Garner (the Garners)[1] $24,300 for the purchase of residential property in Hollandale, Mississippi. In connection with the loan, the Garners executed a deed of trust giving the FmHA a security interest in the property and signed a promissory note setting forth the terms of the repayment obligations to the FmHA. The note contained a standard acceleration clause in case of default.

Soon after the purchase of the property, the Garners became delinquent in their loan payments. The last payment was made on August 6, 1979; by October, 1982, the Garners were in arrears in the amount of $8,575. The FmHA notified the Garners that they were in default and demanded payment. After the Garners failed to cure their default, the government obtained a nonjudicial foreclosure against the property and instituted an eviction action in district court. The district court dismissed the suit and set aside the nonjudicial foreclosure on the ground that the Garners had not waived their right to a judicial hearing prior to foreclosure. The government did not appeal from the district court's judgment.

On July 27, 1981, the government brought the instant action for judicial foreclosure and possession of the Garners' Hollandale property. In December of 1982, while the action was still pending, the Garners requested moratorium assistance from the FmHA. The FmHA denied this request on the ground that, because the Garners' loan payment required less than 35% of their income, they were ineligible for a moratorium under FmHA regulations. *See* 7 C.F.R. § 1951.313 (1984). Although the Garners were apprised of their right to an administrative appeal, none was taken.

Shortly before trial on March 4, 1983, the Garners, pursuant to 42 U.S.C. § 1471(a),[2]

---

**1.** After the instant action was filed, L.J. Garner died on June 6, 1982. This opinion nonetheless refers to the Garners in the plural, as did the district court in its opinion.

**2.** 42 U.S.C. § 1471(a) provides:

(a) The Secretary of Agriculture (hereinafter referred to as the "Secretary") is authorized, subject to the terms and conditions of this subchapter, to extend financial assistance, through the Farmers Home Administration, (1) to owners of farms in the United States and in the Territories of Alaska and Hawaii and in the Commonwealth of Puerto Rico, the Virgin Islands, the territories and possessions of the United States, and the Trust Territory of the Pacific Islands, to enable them to construct, improve, alter, repair, or replace dwellings and other farm buildings on their farms, and to purchase buildings and land constituting a minimum adequate site, in order to provide them, their tenants, lessees, sharecroppers, and laborers with decent, safe, and sanitary living conditions and adequate farm buildings as specified in this subchapter, and

(2) to owners of other real estate in rural areas for the construction, improvement, alteration, or repair of dwellings, related facilities, and farm buildings and to rural residents, including persons who reside in reservations or villages of Indian tribes, for such purposes and for the purchase of buildings and the purchase of land constituting a minimum adequate site, in order to enable them to provide dwellings and related facilities for their own use and buildings adequate for their farming operations, and (3) to elderly or handicapped persons or families who are or will be the owners of land in rural areas for the construction, improvement, alteration, or repair of dwellings and related facilities, the purchase of dwellings and related facilities and the purchase of land constituting a minimum adequate site, in order to provide them with adequate dwellings and related facilities for their own use, and (4) to an owner described in clause (1), (2), or (3) for refinancing indebtedness which—

(A) was incurred for an eligible purpose described in such clause, and

asked the FmHA to refinance their loan. The FmHA denied this request as well, stating that government regulations precluded it from refinancing its own loans. *See* 7 C.F.R. § 1944.22(a) (1984).[3] At trial, the district court in an informal bench ruling found that the Garners' due process rights had been satisfied with respect to the judicial foreclosure proceeding and that the Garners had waived any right to a moratorium on repayment by failing to appeal the FmHA's denial of their moratorium request. The court thereupon stated that it was prepared to order foreclosure upon being satisfied that the FmHA lacked the authority to refinance the Garners' loan. The court accordingly withheld final judgment pending briefing on that issue by the parties.

On July 1, 1983, the district court in a memorandum opinion and order held that 42 U.S.C. § 1471(a) imposed an imperative duty on the Secretary of Agriculture (Secretary) to promulgate regulations providing for FmHA refinancing of its own loans, at least in certain unspecified circumstances. *United States v. Garner,* 567 F.Supp. 313 (N.D.Miss.1983). The court, relying on § 1471(a)'s legislative history, found that "the regulation [prohibiting the FmHA from refinancing its own loans] was not reasonably adopted, conflicts with the act of Congress under which it was promulgated, and cannot stand." *Id.* at 316. Based on this finding, the court barred the FmHA from proceeding with foreclosure until it considered the Garners' loan for refinancing under properly adopted regulations.

> (B)(i) if not refinanced, is likely to result (because of circumstances beyond the control of the applicant) at an early date in the loss of the applicant's necessary dwelling or essential farm service building, or
> (ii) if combined (in the case of a dwelling that the Secretary finds not to be decent, safe, and sanitary) with a loan for improvement, rehabilitation, or repairs and not refinanced, is likely to result in the applicant's continuing to be deprived of a decent, safe, and sanitary dwelling.

**3.** 7 C.F.R. § 1944.22(a) (1984) provides that "[r]efinancing of FmHA debts and debts on a building site without a dwelling is not authorized."

The court also ordered the Garners to make payments into the court's registry in the amount of $150 per month as reasonable rent for the property until the FmHA considers their loan for refinancing.[4] The government appeals.

## II. APPELLATE JURISDICTION.

██ Federal courts of appeals are courts of limited jurisdiction. We have only that authority either endowed by the Constitution or conferred by Congress. As a result, we have the responsibility to examine *sua sponte* the basis of our own jurisdiction. That none of the parties has raised the jurisdictional issue, or even that all of the parties consent to the jurisdiction of the court, is, of course, irrelevant. *Koke v. Phillips Petroleum Co.,* 730 F.2d 211, 214 (5th Cir.1984); *Save the Bay, Inc. v. United States Army,* 639 F.2d 1100, 1102 (5th Cir.1981). Accordingly, we address as a threshold matter whether the district court's order in this case is appealable.

Congress has vested the courts of appeals with "jurisdiction of appeals from all final decision of the district courts of the United States ... except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1291. This requirement of finality has been called "an historic characteristic of federal appellate procedure." *Flanagan v. United States,* — U.S. —, 104 S.Ct. 1051, 1054, 79 L.Ed.2d 288 (1984) (quoting *Cobbledick v. United States,* 309 U.S. 323, 324, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940)). The final judgment rule serves

**4.** The unpublished order provided:
> ORDERED:
> 1. That plaintiff shall consider the FmHA loan of L.J. and Tommie N. Garner for refinancing under properly adopted regulations containing such conditions as the Secretary of Agriculture shall deem necessary.
> 2. That defendants reinstitute payments into the registry of the court in the sum of $150 per month as reasonable rent for the use of the dwelling until plaintiff considers defendants' loan for refinancing.
> On August 15, 1983, the district court, upon the Garners' motion, modified its judgment to reduce their monthly rental payment from $150 per month to $100 per month.

such important interests as preserving the respect due to trial judges by minimizing appellate court interference, reducing the ability of litigants to harass opponents, and keeping the courts unclogged by successions of costly and time-consuming appeals. *Flanagan, supra,* 104 S.Ct. at 1054; *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981). Thus, the Supreme Court has consistently held that as a general rule an order is final only when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Firestone Tire & Rubber Co., supra,* at 373, 101 S.Ct. at 673; *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). *See also Newpark Shipbuilding & Repair, Inc. v. Roundtree,* 723 F.2d 399, 400 (5th Cir.1984) (en banc). Both Congress and the Supreme Court, however, as discussed below, have adopted several exceptions to this strict requirement of finality.

■ We apply first the general rule to the case at hand. Contrary to the government's contentions, the district court did not render an order technically final so as to require the government to make new factual averments in a new complaint before foreclosure could occur. Rather, the district court, instead of relinquishing jurisdiction over the case, suspended the proceedings until the government complied with its order. In its memorandum opinion, the district court made it quite clear that the government could continue with its foreclosure action once the refinancing regulations were issued and applied to the Garners' loan. *See* 567 F.Supp. at 316. Moreover, we do not agree with the government that the district court's order is tantamount as a practical matter to a final decision on the merits. If and when the government decides to comply with the court's order and promulgates refinancing regulations, the district court would still have to determine a number of issues before ordering foreclosure (if still sought by the government), not the least of which would be whether the new regulations are reasonable and consistent with congressional policy as previously described in the court's memorandum opinion. The mere possibility that the government may elect not to proceed with the foreclosure under the conditions established by the district court cannot, of course, render the order final. *See Equal Employment Opportunity Comm'n v. Neches Butane Products Co.,* 704 F.2d 144, 147 (5th Cir.1983) (order requiring Commissioner to submit to discovery before proceeding with enforcement action is not final order under § 1291 even in light of Commissioner's adamant refusal); *United States v. Richardson,* 204 F.2d 552, 555–56 (5th Cir.1953) (order requiring Secretary of the Army to appear for deposition before proceeding with condemnation action held not to be appealable order). In *Richardson,* the refusal to comply with the court's interlocutory order resulted in a stay that lasted for over thirteen years. *United States v. 2,606.84 Acres of Land,* 432 F.2d 1286, 1288 n. 2 (5th Cir.1970) (hearing on condemnation action finally held), *cert. denied,* 402 U.S. 916, 91 S.Ct. 1368, 28 L.Ed.2d 658 (1971).[5]

Having determined that the court's order in the instant case constitutes merely a step toward final judgment and thus is unappealable in the ordinary sense of § 1291, we turn to the various statutory and nonstatutory exceptions to the final judgment rule. We note at the outset though that the government failed to invoke one such exception. Section 1292(b)[6]

---

5. In support of its contentions, the government cites *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), and *Cohen v. Perales,* 412 F.2d 44 (5th Cir.1969), *rev'd on other grounds sub nom. Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). We deal with these cases in subpart D, *infra.*

6. 28 U.S.C. § 1292(b) provides:

    (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially

provides a mechanism by which a district court can certify for appeal an order not otherwise appealable. Under this section, an appellate court has the discretion to permit the appeal of an order so certified if an application is filed within ten days after the entry of the district court's certification order. The purpose of § 1292(b) is to provide for an interlocutory appeal in those exceptional cases where the order in question "involves a controlling question of law as to which there is substantial ground for difference of opinion and [where] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Clarks-Dietz & Associates-Engineers, Inc. v. Basic Construction Co.*, 702 F.2d 67, 69 (5th Cir.1983); *Ex parte Tokio Marine & Fire Insurance Co.*, 322 F.2d 113, 115 (5th Cir.1963). In this case, the district court *sua sponte* certified its order pursuant to § 1292(b) for interlocutory appeal. The government, however, did not file an application within the ten-day period and thus failed to take advantage of this express invitation for appellate review.

### A. 28 U.S.C. § 1292(a)(1).

██ One of the exceptions Congress has created to the final judgment rule is embodied in 28 U.S.C. § 1292(a)(1), which provides for appeals of interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions." [7] The Supreme Court has construed this section to include not only orders that technically grant or deny injunctions, but also those that have the practical effect of doing so. *Carson v. American Brands, Inc.*, 450 U.S. 79, 83–

84, 101 S.Ct. 993, 996–997, 67 L.Ed.2d 59 (1981). In *Carson*, the Supreme Court additionally made it clear that, as a further condition to appealability under § 1292(a)(1), an order must have a "serious, perhaps irreparable, consequence" and be "effectively challenged" only on immediate appeal. *Id.* at 84, 101 S.Ct. at 996; *see also Commodity Futures Trading Comm'n v. Preferred Capital Investment Co.*, 664 F.2d 1316, 1319–20 (5th Cir.1982).

The order issued by the district court here directed the government to "consider the FmHA loan of L.J. and Tommie N. Garner for refinancing under properly adopted regulations containing such conditions as the Secretary of Agriculture shall deem necessary." The order also directed the Garners during the interim to make monthly payments into the registry of the court. There is no question that by its terms the order purports to require significant regulatory action by the Secretary that would have an impact clearly beyond that possibly relating to the Garners. In assessing our jurisdiction under § 1292(a), however, we are not bound by the district court's choice of language but must look instead to the practical effect of the order issued below. *See, e.g., Castanho v. Jackson Marine, Inc.*, 650 F.2d 546, 549 (5th Cir.1981).

We think that the practical effect of the district court's order is not to require any affirmative act by the Secretary but to establish a prerequisite for his proceeding with the foreclosure action. The order was not issued in response to a counterclaim or an otherwise positive claim of entitlement; rather, it was issued upon a determination

---

advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

7. 28 U.S.C. § 1292(a) provides in pertinent part:

(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.

that the FmHA had not satisfied its congressional mandate and thus lacked the authority to foreclose on the Garners' property. Failure on the part of the Secretary to issue the directed regulations, therefore, could not trigger the imposition of contempt sanctions but would only preclude the FmHA from effecting foreclosure. Thus, because of the essentially nonmandatory character of the district court's order, we conclude that it is not "injunctive in nature" and not appealable under § 1292(a)(1). *Cf. Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 10–11 n. 11, 103 S.Ct. 927, 934 n. 11, 74 L.Ed.2d 765 (1983) (drawing distinction for purposes of appealability between case in which plaintiff chooses not to proceed under conditions imposed by the court and case in which the court refuses to allow plaintiff to litigate his claim at all).

### B. The Collateral Order Doctrine.

█ The Supreme Court has also adopted certain narrow exceptions to the final judgment rule, at least in "that small class [of orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). We have recently delineated the prerequisites of the *Cohen* collateral order doctrine as follows:

> The requirements of the collateral order exception to the finality rule, as articulated by the Court in *Coopers & Lybrand,* are that: (1) the order "must conclusively determine the disputed question"; (2) it must "resolve an important issue completely separate from the merits of the action"; and (3) it must "be effectively unreviewable on appeal from a final judgment." These requirements are conjunctive: failure of any one results in failure of jurisdiction.

*Gibbs v. Paluk,* 742 F.2d 181, 183 (5th Cir.1984) (quoting *Coopers & Lybrand, supra,* 437 U.S. at 468, 98 S.Ct. at 2457); *see also Flanagan, supra,* 104 S.Ct. at 1055.

We find the collateral order doctrine inapplicable to the facts of this case on the ground that the district court's order fails to satisfy the necessary second prong of the *Cohen* test—that the order be entirely collateral to the case's substantive issues. In those situations in which the collateral order doctrine has been applied, the order at issue did not touch the merits of the complaint but involved completely ancillary concerns. *See, e.g., Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (pretrial order dismissing indictment on double jeopardy grounds); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (order in class action imposing 90% of notice costs on defendants); *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 1 (1951) (order denying motion to reduce bail); *Cohen, supra* (order allowing plaintiff to proceed without posting security for costs in shareholder derivative action); *Southern Methodist University Ass'n of Women Law Students v. Wynne & Jaffe,* 599 F.2d 707 (1979) (order requiring disclosure of plaintiffs' identities). Here, however, the order presents issues that go to the very heart of the case. At issue is the FmHA's authority to foreclose on the property of the Garners. The Garners' defense is that the FmHA lacks such authority because it has failed to comply with its statutory mandate to consider its delinquent borrowers for refinancing. The district court's order requiring the FmHA to abide by this alleged mandate before proceeding with foreclosure, therefore, could not be more central to the principal matter at hand. Thus, because one of the three elements of the *Cohen* test for the application of the collateral order doctrine is not present, we are unable to exercise jurisdiction on this basis.

### C. "Effectively Out of Court."

█ The Supreme Court has also created a narrow exception to the final judgment

rule for those orders that put the parties "effectively out of court." This exception was apparently first applied in *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962). In that case, a plaintiff brought a federal suit challenging the constitutionality of a state statute. The district court declined to convene a three-judge court and suspended the suit on abstention grounds. The Supreme Court, in holding, *inter alia*, that the order was final and thus reviewable by the court of appeals, stated as justification simply that the "appellant was effectively out of court." *Id.* at 715 n. 2, 82 S.Ct. at 1296 n. 2.

In the past, there have been cases in which we have been willing to construe this exception quite liberally. In *Hines v. D'Artois*, 531 F.2d 726 (5th Cir.1976), for instance, we stated that "when a plaintiff's action is effectively dead, the order which killed it must be viewed as final. Effective death should be understood to comprehend any extended state of suspended animation." *Id.* at 730. More recently, however, the Supreme Court has made it clear that the effectively-out-of-court exception "is limited to cases where (under ... abstention, or a closely similar doctrine) the object of the stay is to require all or an essential part of the federal suit to be litigated in a state forum." *Moses H. Cone Memorial Hospital, supra*, 460 U.S. at 10–11 n. 11, 103 S.Ct. at 934 n. 11. Hence, a distinction is now clearly drawn between cases in which the plaintiff decides not to proceed (albeit under conditions imposed by the dis-

trict court) and cases in which the plaintiff is precluded entirely from litigating his claim in federal court. *Id.*[8]

In the present case, the district court's order did not put the government "effectively out of court" in the sense that the means for returning to court were placed entirely beyond its control. Rather, the government is currently free to proceed once it complies with the district court's conditions. As discussed above, the mere possibility that the government may refuse to take advantage of means made available to reactivate the proceedings is not a sufficient basis under current jurisprudence for the exercise of appellate jurisdiction.

## D. Other Exceptions.

The government on brief asserts what may be taken as two additional grounds for subject matter jurisdiction over the district court's order. First, the government cites *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), evidently arguing that the district court's order should be considered final as a practical matter since on the facts of this case the inconvenience and cost of piecemeal review are outweighed by the dangers of denying justice by delay.[9] Within the last decade, however, this pragmatic finality approach has been virtually limited to the facts of the *Gillespie* case, at least in the context of § 1291 appeals. In *Coopers & Lybrand*, the Supreme Court, in repudiating the

---

**8.** Nor do we think that the holding in *Hines* is inconsistent with this distinction. The district court in *Hines* stayed a suit brought under 42 U.S.C. §§ 1981 and 1983 until plaintiffs filed a Title VII complaint with the Equal Employment Opportunity Commission and pursued that complaint to conclusion. The object of the stay, therefore, was to require the federal claim of discrimination to be adjudicated elsewhere instead of in federal court. Such a requirement is similar to abstention doctrine which also requires federal claims to be litigated elsewhere—in state court. We furthermore note that the Supreme Court itself cited *Hines* with approval in *Moses H. Cone, see* 460 U.S. at 10 n. 11, 103

S.Ct. at 934 n. 11, thus making clear its view that the two cases are reconcilable.

**9.** The government also cites *Paluso v. Mathews*, 562 F.2d 33 (10th Cir.1977), *modified on rehearing*, 573 F.2d 4 (10th Cir.1978), for the related proposition that the possibility that a significant ruling can effect the potential rights of an unknown number of people in itself may justify the exercise of appellate review over an interlocutory order. In *Paluso*, the district court remanded the plaintiff's complaint seeking black lung benefits back to the Department of Health, Education, and Welfare (HEW) after rejecting HEW's assertion that it lacked jurisdiction to entertain claims filed before, but adjudicated

death knell doctrine, observed that, "[i]f *Gillespie* were extended beyond the unique facts of that case, § 1291 would be stripped of all significance." 437 U.S. at 477 n. 30, 98 S.Ct. at 2462 n. 30. Most recently, this Court, sitting en banc, vacated a panel opinion which relied heavily on *Gillespie* -type analysis:

> The panel's case-by-case methodology of determining pragmatic finality for purposes of reviewability is thus in fundamental conflict with the values and purposes of the finality rule to avoid the delay and system-costs of piecemeal and multiple appeals, and to provide a relatively clear test of appealability so that needless precautionary appeals not be taken.

*Newpark Shipbuilding & Repair, Inc., supra,* at 405.

Were we to engage in a factually intensive, *Gillespie*-type analysis in this context, many more appeals from presently nonfinal orders would most likely follow invoking the *Gillespie* pragmatic finality rule as the threshold issue for appellate review. We are bound by the en banc Court's judgment that such a result would be contrary to the underlying purpose and policies of the finality rule. *See id.* at 405 n. 8. Moreover, even if we were not so bound, we would find it difficult to reconcile in a case such as this the invocation of the pragmatic finality approach with the constraints imposed on the reviewability of interlocutory orders by § 1292(b). As noted above, § 1292(b) requires consent of both the trial court and the court of appeals before an interlocutory order can be immediately reviewed. In *Coopers & Lybrand,* the Supreme Court stated that the screening procedure of § 1292(b) was adopted to meet the need for prompt review of certain nonfinal orders without authorizing indiscriminate interlocutory review. 437 U.S. at 474–75, 98 S.Ct. at 2460–61. Indeed, even a cursory review of the provision's legislative history would reveal that the drafters of § 1292(b) felt the participation of the trial judge in procedurally screening interlocutory orders to be "essential" in fulfilling the provision's dual purpose of ensuring that only appropriate cases are subject to interlocutory review and avoiding wasteful and fruitless jurisdictional determinations in the courts of appeals. *See* H.R.Rep. No. 1667, 85th Cong., 2d Sess. 5–6 (1958). The general application of the *Gillespie* rule to interlocutory orders, it seems to us, would result in the circumvention of § 1292(b)'s procedural restrictions and thus be contrary to the design of Congress. *See generally* Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b),* 88 Harv.L.Rev. 607, 613–14 (1975) (dictum in *Gillespie* clearly incorrect since it would bypass certification procedure which is the heart of § 1292(b)).[10]

---

after, June 30, 1973, the date when authority to administer black lung disability benefits shifted from the Secretary of HEW to the Secretary of Labor. On appeal, the Tenth Circuit determined that the remand order was final under § 1291, relying partly on *Cohen* and partly on *Gillespie* and the fact that the issue involved implicated the interests of many claimants who were similarly situated. Indeed, as the *Paluso* court suggested, the order in that case met all three prerequisites of the *Cohen* collateral order doctrine: The order (1) conclusively determined the jurisdictional question, (2) involved a matter separate from the merits of the action, and (3) would effectively be unreviewable at a later date if the HEW on remand were to determine that the plaintiff was entitled to relief. Thus, we find *Paluso* distinguishable on the ground that in the instant case, as noted above, the *Cohen* collateral order doctrine is inapplicable. In addition, we note parenthetically that we find little in the more recent Supreme Court caselaw, or in our own precedents discussed below, to support an exception to the finality rule based solely on the possibility that the interlocutory order involved might have an effect beyond the confines of the pending case.

10. In the case at hand, of course, the district court did express its consent for the appeal of its order by *sua sponte* certifying it under § 1292(b). As pointed out above, however, the government failed to avail itself of this avenue of appeal.

Second, the government argues that the likelihood that the district court's order would be effectively unreviewable absent immediate appeal itself forms a sufficient basis for the exercise of jurisdiction. It is clear that, if the Secretary upon promulgating the necessary regulations finds that the Garners' loan is ineligible for refinancing, the district court will order foreclosure, and the Secretary will never have the opportunity to challenge the relevant portion of the district court's order.

We concede that certain precedents do contain language that could be interpreted as lending support to the government's contention. In *Cobbledick v. United States*, for instance, the Supreme Court stated in dicta that the Court has permitted departures from the final judgment rule "when observance of it would practically defeat the right to any review at all." 309 U.S. at 324–25, 60 S.Ct. at 540–41. Moreover, in *Cohen v. Perales*, 412 F.2d 44 (5th Cir.1969), *rev'd on other grounds sub nom. Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), we relied heavily on the fact that after final judgment an interlocutory order would be effectively unreviewable in order to extend jurisdiction over it. The order at issue there remanded the case back to the Secretary of HEW for reconsideration of the plaintiff's application for social security benefits under a different standard of evidence admissibility. Our holding in *Perales*, however, was also explicitly tied to the rationale of the *Cohen v. Beneficial Industrial Loan Corp.* decision, which was quoted extensively. It is sufficient to note, therefore, that *Perales* is distinguishable from the case at bar in that the order in *Perales* also satisfied the other two ele-

ments of, and thus was appealable under, the *Cohen* collateral order doctrine: the order conclusively determined the disputed question and posed important issues completely separable from merits of the case.

We have observed before that the various exceptions to the finality rule are united by the common requirement that there must be an order, otherwise unappealable, determining substantial rights of the parties, which will be effectively unreviewable if appeal is delayed until final judgment. *Huckeby v. Frozen Food Express*, 555 F.2d 542, 548–49 (5th Cir.1977). However, while this theme is clearly a necessary condition for the exercise of jurisdiction, it is not, by itself, sufficient. Both the exception embodied in § 1292(a)(1) allowing appeals from orders granting or denying injunctions and the collateral order exception require as a prerequisite something more than the danger of ineffective review. If we were to extend jurisdiction on the mere basis of the existence of the common denominator, we would be creating an exception to the final judgment rule that not only would be unheralded but would encompass and undermine the integrity of those exceptions already well-established and applied. We find no support in Supreme Court caselaw for such a move.[11] In fact, in the last several years, the Supreme Court has stressed repeatedly that the three-pronged collateral order doctrine is the sole exception to the final judgment rule in the absence of a motion for an injunction or the application of abstention doctrine. *See Flanagan, supra*, 104 S.Ct. at 1055 ("The Court has allowed a departure [from the rule of finality] *only* [in] the 'limited category of cases falling within the

---

**11.** We recognize, of course, that the Supreme Court has adopted an "effectively unreviewable" exception to the final judgment rule in the context of 28 U.S.C. § 1257, which provides for Supreme Court review of a final judgment of a state's highest court when a right is claimed under federal law. *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 481–83, 95 S.Ct. 1029, 1039–40, 43 L.Ed.2d 328 (1975). As we have recently noted in *Newpark Shipbuilding & Repair, Inc., supra*, however, the concepts of finality for Supreme Court review of state court judg-

ments and for court of appeal review of district court judgments "diverge in some aspects because of the Supreme Court's different and additional function in § 1257 review of state court judgments to protect federal rights." 723 F.2d at 402; *see also* 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3909 (1976). For the reasons stated above, we find the effectively unreviewable exception to § 1257 finality to be inconsistent with the concept of finality as developed by the Supreme Court in the context of § 1291 appeals.

"collateral order" exception...." ") (emphasis supplied) (quoting *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265, 102 S.Ct. 3081, 3083, 73 L.Ed.2d 754 (1982)); *Firestone Tire & Rubber Co., supra,* at 375, 101 S.Ct. at 674 ("Because the litigation from which the instant petition arises had not reached final judgment at the time the notice of appeal was filed, the order denying petitioner's motion to disqualify respondent is appealable under § 1291 *only* if it falls within the *Cohen* doctrine.") (emphasis supplied). Accordingly, we are unable to exercise jurisdiction on either basis asserted by the government.

## III. EPILOGUE.

The district court's order was carefully crafted to achieve several objectives. Undoubtedly recognizing that it was not an appealable order, the district court *sua sponte* certified its order for discretionary review under § 1292(b). The government's subsequent failure to pursue this course of appeal, however, has left us with no choice but to dismiss without prejudice this appeal for lack of subject matter jurisdiction. With the ox thus in the ditch, the parties and the district court may wish to consider the entry of final judgment for the Garners. While that would not leave the parties in the same situation as the district court originally left them in, it would, at the least, result in an appealable order. In the event that final judgment is so entered, while a new notice of appeal will be required, there will be no necessity for further briefing, and the appeal will be referred to this panel for disposition.

DISMISSED.

### E. GRADY JOLLY, Dissenting:

Because I believe the district court's order in this case constitutes an injunction under section 1292(a)(1), I respectfully dissent.

I am persuaded that the order in this case satisfied the requirements for appealability under section 1292(a)(1): first, the order had the practical effect of an injunction; second, the order carried "serious, perhaps irreparable consequences," and third, it could only be effectively challenged on appeal. *Carson v. American Brands*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981). The order here forbids the FmHA, which is charged by Congress with administration and interpretation of the statute authorizing the mortgage in this case, from foreclosing unless the agency changes its national policy and compromises its interpretation of that statute. Moreover, as a practical matter, the agency could not withdraw the regulations once they have been promulgated and implemented on a nationwide basis. The majority concedes that compliance with the order will "require significant regulatory action by the Secretary that would have an impact clearly beyond that possibly relating to the Garners," majority opinion, slip op. at 1542, at 286. Such a requirement to effect this single foreclosure goes far beyond imposing a condition solely on *this* case. The imposition of such a far reaching requirement must be viewed as an injunction.

Finally, I note that the majority's opinion carries with it a serious potential for abuse in permitting district courts the power to direct substantial and seriously disputed nationwide changes in agency procedure without adequate appellate review. The potential for abuse is obscured in the present case by the exemplary conduct of the district court which expressly certified its order for appellate review. That the district court here showed such restraint should not blind us to the unfortunate possible consequences of the holding in this case. I therefore respectfully dissent.