PHILIP R. MARTINEZ, UNITED STATES DISTRICT JUDGE
On this day, the Court considered Defendants Ysleta del Sur Pueblo, the Tribal *707 Council, and the Tribal Governor Carlos Hisa or his Successor's [hereinafter "Defendants"] "Opposed Motion to Amend Orders to Certify for Interlocutory Appeal Under 28 U.S.C. § 1292(b)" (ECF No. 120) [hereinafter "Motion"], filed on September 5, 2018 in the above-captioned cause. The Court also considered Plaintiff State of Texas's [hereinafter "Plaintiff"] "Response in Opposition to Defendants' Motion to Amend Orders to Certify for Interlocutory Appeal Under 28 U.S.C. § 1292(b)" (ECF No. 124) [hereinafter "Response"], filed on September 12, 2018, and Defendants' "Reply in Support of Motion to Amend Orders to Certify for Interlocutory Appeal Under 28 U.S.C. § 1292(b)" (ECF No. 125) [hereinafter "Reply"], filed on September 19, 2018.[1] After due consideration, the Court is of the opinion that Defendants' Motion should be denied for the reasons that follow.
I. FACTUAL AND PROCEDURAL BACKGROUND
This case involves a dispute between Plaintiff and Defendants regarding bingo activities on the Ysleta del Sur Pueblo [hereinafter "Pueblo" or "the Tribe"] reservation in El Paso, Texas. Plaintiff seeks a declaration that the bingo activities in question are illegal and an injunction prohibiting Defendants from continuing the activities.[2] Am. Compl. 8-9, Aug. 15, 2017, ECF No. 8. The Ysleta del Sur Fraternal Organization [hereinafter "Fraternal Organization"], a tribal corporation that is chartered pursuant to § 17 of the Indian Reorganization Act [hereinafter "IRA"], operates the bingo activities. Defs.' Second Mot. To Dismiss Pl.'s First Am. Compl. 9, Apr. 18, 2018, ECF No. 83.
Defendants aver that the Court does not have jurisdiction to allow discovery against the Fraternal Organization because, according to Defendants, it possesses sovereign immunity from suit and discovery. Defs. Opposed Mot. To Reconsider and Mot. For Protective Order 1, Aug. 14, 2018, ECF No. 108. Notwithstanding Defendants' position, the Court has allowed Plaintiff to conduct depositions of and take discovery on the Tribal Governor Carlos Hisa and the Fraternal Organization. Order, Aug. 21, 2018, ECF No. 114; Order, Aug. 8, 2018, ECF No. 107. In their instant Motion, Defendants ask the Court to amend its prior Orders to allow an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Mot. 1.
Specifically, Defendants aver that the following issues should be immediately appealable: "(1) Whether the Fraternal Organization possesses tribal sovereign immunity that has not been waived; and, (2) Whether the Fraternal Organization's tribal sovereign immunity protects the Fraternal Organization and its officers and directors from participating in the discovery process in this case." Id. at 6.
II. LEGAL STANDARD
A district court may make an order appealable that would otherwise not be appealable *708 if the court is of the opinion that: (1) "such order involves a controlling question of law as to which there is substantial ground for difference of opinion" and (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).
The Fifth Circuit "adhere[s] to a strict interpretation of § 1292(b)" and commands that the conditions in § 1292(b)"are to be strictly construed and applied." Ala. Labor Council, AFL-CIO, Pub. Emp. Union, Local No. 1279 v. State of Ala. , 453 F.2d 922, 924 (5th Cir. 1972). Thus, orders certifying an interlocutory appeal are reserved for "exceptional cases" and are "generally disfavored." Mae v. Hurst , 613 F. App'x 314, 318 (5th Cir. 2015) ; United States v. Garner , 749 F.2d 281, 286 (5th Cir. 1985).
III. ANALYSIS
The Court concludes that the issues raised in this case are not the types of exceptional issues appropriate for interlocutory appeal. As discussed below, the questions raised regarding the Fraternal Organization's immunity, though novel, are insufficient to demonstrate a substantial ground for difference of opinion. Further, an interlocutory appeal will delay-rather than advance-the termination of this litigation.
A. Substantial Ground for Difference of Opinion
The Tribe is not immune from this lawsuit.[3] Order Denying Defs.' Mot. To Dismiss and Granting in Part and Denying in Part Pl.'s Mot. To Dismiss 10-15, Aug. 27, 2018, ECF No. 115. The Court is of the opinion that, because the Tribe is not immune from suit, the Fraternal Organization is not shielded from discovery. Thus, the Court has allowed Plaintiff to take discovery of the Fraternal Organization.
By the express terms of the Fraternal Organization's charter, its immunity runs with the Tribe's. See Defs.' Second Mot. To Dismiss Pl.'s First Am. Compl. Ex. 1 (Federal Charter of Incorporation ... [for the] Fraternal Organization), art. IV(C) & XVI(A). The charter provides that the Fraternal Organization has "the same immunities under federal law as the Tribe" and "is an instrumentality of the Yselta del sur Pueblo and is entitled to all of the privileges and immunities of the Tribe ...." Id. Because the Fraternal Organization is entitled to the "same" immunities under federal law as the Tribe, then to the extent that the Restoration Act-which is federal law-waives immunity as to the Tribe, it also waives immunity as to the Fraternal Organization.
Further, the Court expresses serious doubts regarding whether a tribal corporation that is chartered pursuant to § 17 of the IRA could ever have greater immunity than that enjoyed by the tribe. The history and purpose of § 17 corporations suggest that, while a tribal corporation may choose to waive immunity when the tribe did not, the corporation cannot retain immunity when its parent tribe has waived it.
When it enacted the IRA, Congress authorized Indian tribes to, among other things, organize a governing body pursuant to § 16 of the IRA as well as a corporate entity pursuant to § 17 of the IRA. See generally Indian Reorganization Act, Pub. L. No. 73-383, 48 Stat. 984 (1934). Because Congress recognized that "the protection of sovereign immunity would put the Indian tribe at a competitive disadvantage in obtaining credit and entering *709 into business transactions," the ability for the tribal corporate entity to waive its immunity makes it a more attractive partner for business transactions. Parker Drilling Co. v. Metlakatla Indian Cmty. , 451 F.Supp. 1127, 1131 (D. Alaska 1978). Thus, in order to remain commercially competitive, the corporation may expose itself to contract or tort claims without exposing the tribe or the assets of the governing body to suit. See also Am. Vantage Companies, Inc. v. Table Mountain Rancheria , 292 F.3d 1091, 1097 (9th Cir. 2002), as amended on denial of reh'g (July 29, 2002) (stating that when Congress enacted § 17, "it did so in part to enable tribes to waive sovereign immunity, thereby facilitating business transactions and fostering tribal economic development and independence.").
While a § 17 corporation is entitled to waive its immunity without waiving the tribe's, the Court is unable to find authority suggesting that the opposite can occur. Importantly, Defendants fail to cite any authority suggesting that a § 17 corporation can retain sovereign immunity when its parent tribe has waived it.[4]
Additionally, Defendants aver that the Restoration Act fails to waive the Fraternal Organization's immunity because the Act "speaks to offenses 'committed by the tribe , or by any member of the tribe ...,' " but does not expressly name the Fraternal Organization. Reply 3. However, Defendants mischaracterize the Restoration Act's text. The text in § 107(c) that refers to the Tribe and its members is a provision that limits jurisdiction over gaming violations to federal courts: "the courts of the United States shall have exclusive jurisdiction over any offense in violation of subsection (a) that is committed by the tribe, or by any member of the tribe, on the reservation or on lands of the tribe."[5] Restoration Act § 107(c).
However, the key provision, which waives sovereign immunity, is the sentence that follows: "nothing in this section shall be construed as precluding the State of Texas from bringing an action in the courts of the United States to enjoin violations of the provisions of this section."[6] Id. Thus, the Restoration Act's provision that waives sovereign immunity contains no limiting principle that might exclude the Fraternal Organization.[7] Accordingly, even if it were possible for a § 17 corporation to retain greater immunity than its parent *710 tribe (and the Court believes it is not), Defendants have not shown that the Restoration Act fails to waive the Fraternal Organization's immunity.
The Fifth Circuit has not spoken on whether the Restoration Act waives the Fraternal Organization's sovereign immunity, as this appears to be a matter of first impression. The novelty of this issue does not necessarily make it suitable for an interlocutory appeal, as "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." In re Flor , 79 F.3d 281, 284 (2d Cir. 1996). Further,
Courts traditionally will find that a substantial ground for difference of opinion exists where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." However, "just because a court is the first to rule on a particular question ... does not mean there is such a substantial difference of opinion as will support an interlocutory appeal."
Couch v. Telescope Inc. , 611 F.3d 629, 633 (9th Cir. 2010) (quoting 3 FEDERAL PROCEDURE, LAWYERS EDITION § 3:212 (2010) ).
Finally, Defendants aver that, "as the parties' briefing demonstrates, there is a substantial ground for difference of opinion." Mot. 3. However, disagreement between the parties is insufficient to satisfy this condition. If fervent disagreement was sufficient to satisfy this requirement, then the majority of orders issued by district courts would be ripe for interlocutory appeal. However, § 1292(b) contemplates a more rigorous demonstration. See, e.g., Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group , 233 F.Supp.2d 16, 20 (D.D.C. 2002) ("Mere disagreement, even if vehement, with a court's ruling does not establish a substantial ground for difference of opinion sufficient to satisfy the statutory requirements for an interlocutory appeal.").
In short, even though the issue presented here is novel and the parties disagree about how it should be decided, there is no substantial ground for difference of opinion.
B. Material Advancement of the Ultimate Termination of the Litigation
Further, the Court believes that an interlocutory appeal would unnecessarily delay litigation. See, e.g., Struthers Sci. & Int'l Corp. v. Gen. Foods Corp. , 290 F.Supp. 122, 130 (S.D. Tex. 1968) ("The court's opinion is that such an appeal would more likely tend to delay rather than advance termination of the litigation. The parties would be better advised to expend their energies completing discovery rather than taking appeals.").
Defendants argue that an interlocutory appeal is appropriate because the Fraternal Organization may be exposed to unnecessary discovery and because improper materials may be used during the course of litigation. Mot. 5. However, as discussed above, the Court (i) believes that the Fraternal Organization's charter expressly states that it and the Tribe have the "same" immunities under federal law, (ii) seriously doubts that any § 17 corporation can have greater immunity than its tribe, and (iii) believes that, even if the Fraternal Organization could retain immunity when the Tribe had waived it, the text of the Restoration Act would permit this suit against the Fraternal Organization. Thus, the Court finds it improbable that allowing *711 the State to take discovery against the Fraternal Organization is improper. Accordingly, an interlocutory appeal would likely delay the progress of discovery and the ultimate termination of litigation in this case.
IV. CONCLUSION
Accordingly, IT IS ORDERED that Defendants Ysleta del Sur Pueblo, the Tribal Council, and the Tribal Governor Carlos Hisa or his Successor's "Opposed Motion to Amend Orders to Certify for Interlocutory Appeal Under 28 U.S.C. § 1292(b)" (ECF No. 120) is DENIED .

Defendants filed a "Notice of Errata ..." (ECF No. 126) [hereinafter "Notice"] on September 20, 2018. Therein, Defendants notified the Court that, due to a formatting error, their Reply exceeded the five page limit by two lines of text. Notice 1. The Court appreciates Defendants' prompt correction and excuses the formatting error. As an exhibit to the Notice, Defendants attached a reformatted Reply which complies with the limit. Id. at Ex. A. Any citations in this Order refer to the initial Reply (ECF No. 125) and not to the Notice's exhibit.

Defendants, as Counter-Plaintiffs, also raise counterclaims against Ken Paxton in his official capacity as the Texas Attorney General. Defs.' First Am. Counterclaim, Sept. 7, 2018, ECF No. 121.

As discussed in the August 27 Order, the Court's decision regarding the Tribe's immunity follows a line of precedent addressing the Tribe's waiver of sovereign immunity via the Restoration Act.

Defendants assert that the Fraternal Organization's immunity is "separate from, and different than, the Tribe's immunity." Reply 3. The Court agrees that the Fraternal Organization's immunity is "separate from" the Tribe's immunity, but only to the extent that the Fraternal Organization may choose to waive its sovereign immunity without, in turn, waiving the Tribe's immunity.

To be clear, the Court does not believe that the Fraternal Organization could be sued over a gaming offense in violation of subsection (a) in any forum other than federal court simply because the Fraternal Organization is not named here. As an organization that is wholly controlled by the Tribe, it is evident that this clause would limit jurisdiction over any gaming offense committed by the Fraternal Organization to federal court.

Similarly, § 107(a), which provides that "[a]ll gaming activities which are prohibited by the laws of the State of Texas are hereby prohibited on the reservation and on the lands of the Tribe," contains no limiting principle that might exclude the Fraternal Organization from the Restoration Act's reach.

Moreover, the Restoration Act was enacted in 1987; the Fraternal Organization's charter states that it was formed in 2011. See generally Ysleta del Sur Peublo and Alabama and Coushatta Indian Tribes of Texas Restoration Act, Pub. L. No. 100-89, 101 Stat. 666 (1987); Defs.' Second Mot. To Dismiss Pl.'s First Am. Compl. Ex. 1 (Federal Charter of Incorporation ... [for the] Fraternal Organization). Thus, when the Restoration Act was enacted, Congress had no reason to specify that the Act was intended to reach the Fraternal Organization. The Tribe cannot circumvent the agreement it made via the Restoration Act by chartering an organization to organize gaming operations.