**JUDICIAL WATCH, INC., Plaintiff,**

v.

**NATIONAL ENERGY POLICY DEVELOPMENT GROUP, Defendant.**

**Sierra Club, Plaintiff,**

v.

**Vice President Richard Cheney, et al. Defendants,**

**Nos. CIV.A. 01–1530(EGS), CIV.A. 02–631(EGS).**

United States District Court, District of Columbia.

Nov. 26, 2002.

Larry Klayman, Paul J. Orfanedes, Judicial Watch, Inc., Washington, DC, for plaintiff Judicial Watch.

Roger M. Adelman, Washington, DC; David G. Bookbinder, Washington, DC, Patrick Gallagher, Alex Levinson, Sierra Club, San Francisco, CA, plaintiff Sierra Club.

Daniel Edward Bensing, David O. Buchholz, Anne L. Weismann, Thomas Millet, Jennifer Paisner, U.S. Department of Justice, Civil Division, Federal Programs Branch, Washington, DC, for federal defendants.

Howard M. Crystal, Meyer & Glitzenstein, Washington, DC, for amicus NRDC.

Robert S. Litt, Arnold & Porter, Washington, DC, for defendant Thomas Kuhn.

Paul Christian Rauser, Williams & Connolly, Washington, DC, for defendant Haley Barbour.

Richard D. Horn, Bracewell & Patterson LLP, Washington, DC, for defendant Mark Racicot.

## MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

Pending before this Court is non-agency defendants' motion for certification of interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Upon careful consideration of this motion, the responses and reply thereto, the applicable statutory and case law, and for the following reasons, the defendants' motion is hereby **DENIED**.

## I. BACKGROUND

Defendants Vice–President Richard B. Cheney, the National Energy Policy Development Group ("NEPDG"), Andrew Lundquist, Joshua Bolten, and Larry Lindsay[1] have recently filed with the

---

1. For ease of reference, these individuals will be referred to throughout this opinion as either "non-agency defendants," or "defendants," to distinguish them from the federal

United States Court of Appeals for the District of Columbia Circuit a series of appeals of this Court's July 11, 2002, August 2, 2002, September 9, 2002, October 17, 2002, and November 1, 2002 Orders.

On November 7, 2002, defendant Vice-President Richard Cheney filed a notice of appeal of this Court's November 1, 2002, October 17, 2002, and September 9, 2002 Orders approving discovery of him by plaintiffs. These Orders, *inter alia,* require him to produce non-privileged documents responsive to plaintiffs' First Request for Production of Documents or file detailed and precise objections to particular requests with the Court. The defendant was also directed to produce a privilege log identifying with specificity the documents or categories of documents withheld pursuant to an asserted privilege, as well as the grounds therefor. Mr. Cheney appeals these Orders as "final orders" under what defendants have dubbed the "Nixon rule." Defs.' Mot. at 3. Defendant premises the Court of Appeals' jurisdiction for such an appeal on the Supreme Court's ruling in *United States v. Nixon* deeming a discovery Order denying a motion to quash a subpoena *duces tecum* directed to the President of the United States a "final order" for the purpose of bringing its appeal within the reach of 28 U.S.C. § 1291. *United States v. Nixon,* 418 U.S. 683, 690–92, 94 S.Ct. 3090, 3098–99, 41 L.Ed.2d 1039 (1974). This narrow rule was adopted by the *Nixon* Court to avoid the "unseemly" circumstance in which the President of the United States would be forced to disobey the Judicial Branch to obtain appellate review of its orders. *Id.* at 692, 94 S.Ct. 3090.

The so-called "Nixon rule" appears to have been applied only in *United States v. Nixon,* and defendants seem to concede that it has never been applied to the Office of the Vice–President. *See* Defs.' Reply in

Supp. of Mot. for a Stay at 3. Mr. Cheney argues for an extension of *Nixon's* holding to this case, contending that the underlying rationale applies with equal force to the Vice–President, rendering this Court's discovery Orders "final orders" subject to appellate review pursuant to § 1291, at least as applied to Vice–President Cheney. *Id.*

Additionally, on November 12, 2002, all five non-agency defendants filed an Emergency Petition for Writ of Mandamus with the Circuit Court, seeking review of this Court's Orders authorizing discovery of them. Defendants allege that these Orders reflect "clear error" on this Court's part, and urge the Court of Appeals to order this Court to dismiss Vice President Cheney from this action, and to decide this case on the basis of the administrative record alone, without the benefit of further discovery. Emergency Mot. for Stay at 2; Emergency Pet. for Writ of Mandamus at 1, 8.

 Notwithstanding this flurry of appellate activity, non-agency defendants have also filed a motion before this Court to certify three issues for interlocutory appeal to the United States Court of Appeals for the D.C. Circuit. Defendants argue that they are entitled to pursue all three avenues of appeal, but urge this Court to grant their motion for certification pursuant to § 1292(b) in order to afford the Court of Appeals "more options to consider in determining whether and how . . . it is going to take the case, because interlocutory appeal would be a more traditional way for the Court to examine the issues rather than the Nixon theory or mandamus." Tr. 11/13/02 Hr'g. at 28:22–29:5; Defs.' Reply in Supp. of Mot. for Stay at 2–4. However, as plaintiffs correctly point out, convenience alone is not a

agency defendants who have not joined in this motion.

ground for granting certification under § 1292(b). *See* Tr. 11/13/02 Hr'g. at 33:11—33:17. A party must establish a factual and legal predicate under the standard set forth in 28 U.S.C. § 1292(b) in order for a question to be properly certified for interlocutory appeal, a prerequisite defendants have failed to satisfy in this case.

## II. Motion for certification pursuant to 28 U.S.C. § 1292(b)

Defendants contend that they are entitled to certification of this Court's July 11, 2002, August 2, 2002, September 9, 2002, and October 17, 2002 Orders for immediate appeal pursuant to 28 U.S.C. § 1292(b) to resolve the following questions of law:

> 1) whether the Federal Advisory Committee Act ("FACA") is enforceable against the Vice President through an action for *mandamus;*
>
> 2) whether a private plaintiff may obtain discovery of the Vice President and other non-agency defendants in a civil case "absent any showing of need;"
>
> 3) whether, "in light of principles of judicial review established by the Administrative Procedure Act ('APA'), and in light of the constitutional concerns raised by plaintiffs' suit and requests for discovery, this case should be dismissed or resolved on the basis of the administrative record."

Defs.' Mot. for Certification at 2.

### A. *Standard of Review*

A District Court may certify an interlocutory order for immediate appeal if it concludes that it

> involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of litigation.

28 U.S.C. § 1292(b); *Trout v. Garrett*, 891 F.2d 332, 335 n. 5 (D.C.Cir.1989).

Through § 1292(b), "Congress ... chose to confer on District Courts first line discretion" and "circumscribed authority to certify for immediate appeal interlocutory orders deemed pivotal and debatable." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 46, 47, 115 S.Ct. 1203, 1210, 131 L.Ed.2d 60 (1995).

In an opinion relied upon by both parties, the Seventh Circuit described a "controlling" question of law as one which

> will determine the outcome or even the future course of the litigation ... a question is controlling, even though its decision might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants.

*Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir.1991). One District Court within this Circuit has held:

> Under section 1292(b), a controlling question of law is one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources.

*In re Vitamins Antitrust Litigation*, Civ. A. No. 99–197, 2000 WL 673936 at *2 (D.D.C. Jan. 27, 2000).

The threshold for establishing the "substantial ground for difference of opinion" with respect to a "controlling question of law" required for certification pursuant to § 1292(b) is a high one. The parties cite to only one instance within this Circuit in which a court found that it had been met, based on the existence of an apparent inconsistency between a position taken by one panel of the Court of Appeals when remanding to the District Court and that set forth in a prior Circuit opinion. *See Johnson v. Wash. Metro Area Trans. Auth.*, 773 F.Supp. 459, 460 (D.D.C.1991). In another case, not cited by either party, a District Court found that, although the

plain statutory language governing a jurisdictional issue could be read consistently with a prior Circuit opinion, certain language in the appellate court opinion "could be seen as in tension with the plain wording of the statute," thereby creating the factual and legal predicates for certification for interlocutory appeal pursuant to § 1292(b). *Carr Park, Inc. v. Tesfaye*, 229 F.3d 1192, 1193–94 (D.C.Cir.2000). In the more traditional case, such as this one, where the party moving for certification pursuant to § 1292(b) disagrees with a court's order denying a motion to dismiss and granting discovery, other District Courts within this Circuit have stated unequivocally that

> Mere disagreement, even if vehement, with a court's ruling on a motion to dismiss does not establish a "substantial ground for difference of opinion" sufficient to satisfy the statutory requirements for an interlocutory appeal.

*First Am. Corp. v. Al–Nahyan*, 948 F.Supp. 1107, 1116 (D.D.C.1996); *see also In re Vitamins Antitrust Litigation*, 2000 WL 673936 at *3.

■ A party seeking certification pursuant to § 1292(b) must meet a high standard to overcome the "strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals." *United States v. Nixon*, 418 U.S. at 690, 94 S.Ct. 3090. "Although courts have discretion to certify an issue for interlocutory appeal, interlocutory appeals are rarely allowed … the movant 'bears the burden of showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review

until after the entry of final judgement.' " *Virtual Def. and Dev. Int'l, Inc. v. Republic of Moldova*, 133 F.Supp.2d 9, 22 (D.D.C.2001) (quoting *First Am. Corp. v. Al–Nahyan*, 948 F.Supp. 1107 (D.D.C. 1996)). The "law is clear that certification under § 1292(b) is reserved for truly exceptional cases." *In re Vitamins Antitrust Litigation*, 2000 WL 673936 at *1 (citing *Tolson v. United States*, 732 F.2d 998, 1002 (D.C.Cir.1984)). Defendants have fallen far short of demonstrating that the questions of law presented by the challenged Orders arise under such exceptional circumstances as to warrant disruption of the favored process of appellate review following final judgment.[2]

### B. Enforcement of FACA against Vice–President through mandamus relief

■ Defendants contend that "it is appropriate to allow the court of appeals at this time to determine" the question of whether FACA is enforceable against the Vice President by way of an action for *mandamus* because early dismissal of the Vice President from this action would eliminate thorny constitutional issues posed by his presence. *See* Defs.' Mot. for Certification at 7. Defendants further argue that dismissal of the Vice–President, in turn, would "materially advance" the litigation, thus rendering this question a "controlling" one for the purposes of § 1292(b) analysis under the case law cited by both parties. *Id.*

As an initial matter, while dismissal of the Vice–President at this point in the litigation would certainly bring the litigation to a swift conclusion as to this particu-

---

2. It is significant that this Circuit has commented, in *dicta*, that certification pursuant to § 1292 is particularly appropriate "when claims of immunity" are at issue. *McSurely v. McClellan*, 697 F.2d 309, 316 n. 12 (D.C.Cir.1982). Nevertheless, given that it is executive privilege, not immunity from suit, which is at issue here, even if this statement were not *dicta*, it still would not bring this case within the realm of "exceptional circumstances" justifying certification for interlocutory appeal.

lar defendant, it does not appear that it would eliminate constitutional concerns from this case altogether, nor materially advance the litigation. Defendants have continuously and vehemently contended that discovery is inappropriate as to *all* non-agency defendants, and not just the Vice–President, due to the separation of powers concerns defendants maintain are triggered by any and all discovery of the National Energy Policy Development Group ("NEPDG") and other non-agency defendants. Assuming the non-agency defendants other than the Vice–President do not change their position in this regard, dismissal of the Vice–President as a defendant from this case would neither remove nor expedite the resolution of the complex constitutional issues presented.

Moreover, because the Orders defendants seek to certify for appeal concern only discovery reasonably calculated to ascertain whether FACA is even applicable here, it is premature to characterize the question of whether this Court can grant *mandamus* relief ordering compliance with FACA as a "controlling" question of law. Additionally, the Court's July 11, 2002 Memorandum Opinion & Order did not resolve the question of whether *mandamus* relief was available against the Vice–President for a violation of FACA. *Judicial Watch v. Nat'l Energy Policy Dev. Group*, 219 F.Supp.2d 20, 43–45 (D.D.C. 2002). The Court deferred a decision on that issue until it could be ascertained, by means of carefully limited discovery, whether FACA's non-discretionary duties fell exclusively on the Vice–President's shoulders, and, if so, whether issuance of a writ of *mandamus* to him would be an appropriate exercise of this Court's discretion in light of the facts unearthed through discovery. *Id.* Furthermore, "since the controlling question of law ha[s] not yet been resolved by the court ... [n]o substantial ground for difference of opinion exist[s]."

*In re Vitamins Antitrust Litigation*, 2000 WL 673936 at *1.

Even if the issue were before the Court at this stage of the litigation, it is quite clear that the question defendants seek to certify is not one as to which, at least in the hypothetical presented in the absence of a more developed factual record, there is "substantial ground for difference of opinion." *See Judicial Watch v. Nat'l Energy Policy Dev. Group*, 2002 WL 1483891 at *21–22 ("Defendants cite no cases in support of their argument ... [and] ignore[ ] the Supreme Court's guidance ...."). Defendants correctly state that *mandamus* review is a " 'drastic' remedy, 'to be invoked only in extraordinary situations.' " *Consolidated Edison Co. v. Ashcroft*, 286 F.3d 600, 605 (D.C.Cir.2002). However, the fact that invocation of a procedure is highly unusual does not, in and of itself, create a "substantial ground for difference of opinion" on the question of its potential applicability under certain circumstances. Additionally, precedent from this Circuit has consistently held that *mandamus* relief against Executive Officers, up to and including the President of the United States, is available to enforce performance of non-discretionary statutory duties. *See, e.g., Nat'l Wildlife Fed'n v. United States*, 626 F.2d 917, 923 (D.C.Cir. 1980) ("Where a federal official has a clear obligation to perform a ministerial duty, a federal district court may issue a writ of mandamus under 28 U.S.C. section 1361 to compel the fulfillment of the obligation. Mandamus is not precluded because the federal official at issue is the President of the United States."); *Nat'l Treasury Employees Union v. Nixon*, 492 F.2d 587 (D.C.Cir.1974). Defendants have not yet established, as a matter of law, that the requisite conditions for *mandamus* relief do not and cannot exist in this case. Accordingly, this Court has held that discovery is necessary to assist in determining

whether the particular factual circumstances presented by these cases justify issuance of the writ notwithstanding its "drastic" nature. *See Judicial Watch v. Nat'l Energy Policy Dev. Group*, 2002 WL 1483891 at * 21–22. Defendants have failed to even suggest that there is a "substantial ground for difference of opinion," based on controlling authority, as to the propriety of such a course of action.

Defendants' reliance on cases from other Circuits holding *mandamus* relief to be unavailable where a statute creating a non-discretionary duty does not provide for a private right of action does not change this result. *See* Defs.' Mot. for Certification at 8. It is not unusual that Circuits differ with respect to the proper resolution of legal issues deemed controlling in a particular case. If interlocutory appeals were to be granted in every such instance, our system's strong preference for appeal only upon final judgment would be severely undermined. Indeed, in view of this Circuit's opinion in *Chamber of Commerce v. Reich*, 74 F.3d 1322 (D.C.Cir.1996), which represents the current, undisputed law of this Circuit, there is no "substantial ground for difference of opinion" on this question for the purposes of § 1292(b) analysis. Even if defendants' assertion that there is a need for further clarification of the limits of *mandamus* review within this Circuit is accepted as true, defendants have offered no reason why such clarification cannot take place upon appellate review after final judgment rather than through the disruptive process of interlocutory appeal. *See* Defs.' Mot. at 8.

Defendants' citation to the recently decided case of *Gonzaga University v. Doe* for the proposition that *mandamus* relief is unavailable as a matter of law in this case is equally unpersuasive. See Tr. 11/13/02 Hr'g. at 28:17—28:21; Defs.' Mot. for Certification at 8. In *Gonzaga*, the U.S. Supreme Court clarified its precedent with respect to enforcement, through actions brought under 42 U.S.C. § 1983, of conditions placed on receipt of federal funding in federal statutes enacted pursuant to the Spending Clause. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S.Ct. 2268, 2272–75, 153 L.Ed.2d 309 (2002). *Gonzaga's* expansion of the discussion in *Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), regarding the recognition of implied private rights of action in the absence of express statutory language or Congressional intent, does not create a "substantial ground for difference of opinion" with respect to the approach adopted by this Court in the present case. *See Gonzaga Univ. v. Doe*, 122 S.Ct. at 2277. In fact, this Court expressly followed *Sandoval* in holding that no private right of action can be implied under FACA, thereby adhering to the very line of cases defendants now point to as creating a sufficient basis for interlocutory appeal. *Judicial Watch v. Nat'l Energy Policy Dev. Group*, 2002 WL 1483891 at *10–12.

Furthermore, the Supreme Court opinion in *Gonzaga*, at its core, concerned the entirely distinct question of how courts should go about ascertaining whether a personal right triggering the application of 42 U.S.C. § 1983 exists. *Gonzaga Univ. v. Doe*, 122 S.Ct. at 2276–77. While instructive, this discussion has little or no application to the question of whether a statute creates a non-discretionary duty triggering the potential application of the federal *mandamus* statute, 28 U.S.C. § 1361. Defendants' efforts to equate implied personal rights, or implied rights of action, the subjects of the *Gonzaga* opinion, with an action pursuant to the federal *mandamus* statue for failure to perform a non-discretionary duty created by statute represent, at best, an argument by analogy for extension of the law, and are insufficient to create a "substantial ground for difference of opinion," as that term is used in

§ 1292(b), justifying immediate resolution of the applicability of the *mandamus* statute in this case.

Defendants have failed to establish the existence of a "substantial ground for difference of opinion" with respect to the question of whether the federal *mandamus* statute offers a means by which FACA could be enforced against the Vice President. Accordingly, certification of this question is inappropriate under § 1292, given the conspicuous absence of one of the policy considerations favoring application of the exceptional procedure of interlocutory review prior to final judgment.

### C. Availability of Discovery "Absent Any Showing of Need"

Defendants also contend that the second question for which they seek certification, "whether a private plaintiff may obtain discovery ... absent any showing of need," is "substantial and controlling," and therefore meets the standard for certification under § 1292(b). Once again, defendants fail to establish the factual and legal predicates for interlocutory appeal of this Court's discovery Orders pursuant to § 1292(b).

As an initial matter, the parties disagree as to whether a District Court's discovery orders are, as a general rule, the proper subject of an interlocutory appeal. Plaintiff Sierra Club contends that they are not, relying on the Eighth Circuit's opinion in *White v. Nix*, which suggests that discovery orders "generally never will involve a controlling question of law." *White v. Nix*, 43 F.3d 374, 377 (8th Cir.1994) (citation omitted). In *Nix*, the Eighth Circuit denied, as improvidently granted, review under § 1292(b) of a District Court order requiring production of documents under conditions set out in a protective order. The court held that because the nature and scope of discovery is committed to the

sound discretion of the trial court, allegations of abuse of that discretion do not create legal issues or raise the types of legal questions for which interlocutory review pursuant to § 1292(b) would be appropriate. *Id.* Defendants counter that there is no "blanket rule" precluding interlocutory appeal of discovery orders, reasoning that this Circuit has found such orders to be a potentially appropriate subject of the far more drastic remedy of *mandamus*. Tr. 11/13/02 Hr'g. at 30:1—30:3; Defs.' Reply at 4, both citing *In re Executive Office of the President*, 215 F.3d 20, 23 (D.C.Cir.2000) [hereinafter *"EOP"*]. Defendants further argue that interlocutory review is particularly appropriate where, as here, interlocutory orders raise complex and "serious" constitutional issues. Defs.' Mot. at 5; *Cf. EOP*, 215 F.3d at 23 ("disclosure of highly privileged material followed by appeal after judgment is obviously not adequate in such cases—the cat is out of the bag.").

This Court does not dispute that defendants' constitutional challenges to the application of FACA and the APA in this case are "serious." *See Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 219 F.Supp.2d at 44–45. "Rather, it is out of concern for the seriousness of this issue that this Court has determined that proceeding to discovery is appropriate." *Id.* The Court has held development of the factual record through the discovery ordered in this case necessary to decide the serious issues before it. *Id.* at 54–55.

However, § 1292 jurisprudence does not appear to equate any issue susceptible to a separation of powers argument with a "controlling" question of law as that language is used in § 1292(b). If an argument, even one that invokes separation of powers doctrine, is without support in existing case law, then the questions of law raised thereby are neither substantial nor

controlling for the purposes of § 1292(b) analysis. *See Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 219 F.Supp.2d at 49–50. Moreover, even if defendants' arguments for a dramatic expansion of the current separation of powers doctrine are ultimately found to be persuasive, § 1292(b) "was not intended merely to provide review of difficult rulings in hard cases." *United States ex rel Hollander v. Clay*, 420 F.Supp. 853, 859 (D.D.C.1976). Defendants' legal arguments, and this Court's rulings on these serious constitutional questions, can just as easily, and more appropriately, be reviewed upon entry of final judgment.

Interlocutory appeal is reserved for "extraordinary cases," and not every case presenting constitutional questions, nor every case permitting discovery requests to be made of Executive Officers, meets this admittedly high standard. *See Clinton v. Jones*, 520 U.S. 681, 702, 705, 117 S.Ct. 1636, 1648, 1650, 137 L.Ed.2d 945 (1997); *EOP*, 215 F.3d at 23. For instance, in *EOP*, the Court of Appeals declined to hear an interlocutory appeal, pursuant to § 1292(b), of the District Court's denial of a motion to dismiss premised on the argument that the Privacy Act did not apply to the Executive Office of the President. *Id.* at 23. In so doing, the Circuit impliedly held that allowing such a case to proceed to discovery and follow established appellate procedures was appropriate notwithstanding the parties involved or the constitutional issues presented. *Id.* The Circuit also denied the government's petition for *mandamus* review of a subsequent discovery order, expressly commenting on the sufficiency of appellate review upon final judgment to resolve the "serious" constitutional issues presented. *See id.* at 25.

The Circuit's reasoning in *EOP* is applicable to the motion currently before this Court. In both cases the Executive Branch contends that it is not properly subject to a statute, and that discovery in an action brought to enforce the statute is improper. *See id.* at 21. In *EOP*, defendants had asserted privileges which both the District and Circuit Courts found to be without merit. *Id.* at 22. In the present case, defendants have refused to even review responsive documents and make specific objections and assertions of privilege. Notwithstanding this difference in the underlying facts, in both cases defendants offered "no argument that [they] are even entitled to the privileges." *Id.* at 23–24. Accordingly, these cases are sufficiently analogous for this Court to conclude that there are no "extraordinary circumstances" here requiring resolution on interlocutory appeal.

Additionally, defendants have not succeeded in establishing that there is a "substantial ground for difference of opinion" on the question of whether any discovery requests can be made of presidential advisors or the Vice–President without first showing "any need." As this Court has repeatedly stated, defendants mischaracterize the authority they cite for the proposition that a private party seeking discovery from the Vice–President and presidential advisors must first show a "compelling need," beyond the "mere allegations" sufficient to survive a motion to dismiss, for the information sought. After considerable briefing by all parties, this Court concludes that there is no legal precedent for defendants' position that the discovery procedures adopted by this Court place an unconstitutional burden on them. Thus, there can be no "substantial ground for difference of opinion" justifying interlocutory appeal on this issue. Moreover, defendants appear to have conceded, both at oral argument on this motion and in their recent briefings, that the real difference of opinion lies between the defendants themselves and the Court, rather than within precedential authority.

Tr. 11/13/02 Hr'g. at 30:21—30:25. As noted by the District Court in *Al–Nahyan*, "[t]he mere claim that a decision has been wrongly decided is not enough to justify an interlocutory appeal." *First Am. Corp. v. Al–Nahyan*, 948 F.Supp. at 1117.

Defendants argue that this Court has failed to consider two D.C. District Court opinions which create the requisite "substantial difference of opinion" on the question of whether executive privilege must first be asserted before a party seeking discovery is required to show "need." Defs.' Reply at 2–4, 5 citing *United States v. Poindexter*, 732 F.Supp. 142, 146 (D.D.C.1990) [hereinafter *"Poindexter II"*]; *United States v. Poindexter*, 727 F.Supp. 1501, 1507–08, 1509 (D.D.C.1989) [hereinafter *"Poindexter I"*]. In fact, the Court has simply found them inapposite, and easily distinguishable from the facts before it. It is true that, in the two *Poindexter* opinions cited by defendants, executive privilege had not first been asserted before a party seeking discovery was required to make any showing prior to obtaining discovery. However, the showing the party seeking discovery was required to make was not one of "need," but rather one of materiality and relevance pursuant to the applicable federal rules. *See Poindexter I*, 727 F.Supp. at 1509, *Poindexter II*, 732 F.Supp. at 147, both citing Fed. R.Crim.P. 17(c). The party seeking discovery in that case was never required to do anything more than plaintiffs were required to do here with respect to submission of a proposed discovery plan: demonstrate that the documents and information sought are material and relevant to the legal questions before the Court. Additionally, the *Poindexter II* opinion expressly rejects a position similar to that taken by defendants here, stating

> Equally erroneous is the argument of counsel for former President Reagan and Department of Justice counsel acting on behalf of President George Bush ... [who] assert that, in addition to showings of relevancy, materiality, and other incidents of admissibility, defendant is required to demonstrate that the testimony of the former President is central to his defense, and that a substitute from any other source would be inadequate...the precedents cited for this proposition do not support it. *The proposed standard would be extraordinary in a case where executive privilege has been invoked; it is particularly so in a non-privilege situation.* [emphasis added].

*Id.* at 146–47. Once again, the defendants have misrepresented precedent in order to fit it within their theory that a party must make some showing of "need" before an Executive Branch defendant should be even required to review documents responsive to a Court-approved discovery request, and to determine if viable grounds for assertion of a privilege exists.

The most recent *Poindexter* opinion sets forth the appropriate standard to be applied when deciding whether a criminal defendant's *subpoena* of both former and current Presidents to testify at trial should be honored. *Poindexter II*, 732 F.Supp. at 146. The District Court held that

> While the former President has *not claimed executive privilege, he will only be compelled to testify at the trial of this case if the Court is satisfied that his testimony would be material as tested by a meticulous standard,* as well as being necessary in the sense of being a more logical and more persuasive source of evidence than alternatives that might be suggested. [emphasis added]

*Id.* at 147. The District Court reasoned that a contrary holding could infringe on the Executive Branch's deliberative processes if the President could subsequently be compelled to testify "with frequency

and for non-essential or relatively trivial reasons." *Id.* at 147–48. Further, because the testimony subpoenaed might involve both privileged and non-privileged conversations, the District Court was mindful of the potential consequences of establishing a rule effectively requiring the President to assert executive privilege with respect to all conversations in order to avoid being called to testify, particularly in light of the Supreme Court's cautionary instruction that the executive privilege should not be "lightly invoked." *Id.* at 148 (citing cases).

The circumstances before the court in *Poindexter II* are easily distinguishable, on several grounds, from those extant in this case. A decision by the District Court in *Poindexter II* to enforce a subpoena requiring the President to testify at a trial would be analogous to a decision in this case requiring defendants to produce forthwith all of the documents requested by plaintiffs. No such Order has been entered in this case. In fact, this Court has made it abundantly clear that it is not, at this stage, requiring production of any privileged documents. With respect to document production and responses to interrogatories, as opposed to subpoenas for live testimony, courts have approved, and this Court has adopted, procedures which allow the President and Executive Branch officials to first identify which documents are properly the subject of an invocation of executive privilege and which are not, and to produce the latter, but not the former. *See Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 230 F.Supp.2d 12, 15 (D.D.C.2002) (citing cases).

Second, the implications of honoring a subpoena requiring the President to physically appear and testify before a Court are significant in terms of potential interference with the Presidential function, as noted by the *Poindexter II* opinion. Such a requirement is substantially different from an order requiring Executive Branch staff members to review documents responsive to a discovery request, identify those which are privileged, and produce non-privileged documents and a privilege log, a procedure approved by the Supreme Court. *See, e.g., Nixon v. Administrator of General Services*, 433 U.S. 425, 439–55, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). Moreover, this Court has already determined, both in its July 11, 2002 Order, and at a subsequent hearing with respect to plaintiffs' proposed discovery plan, that the discovery sought is material and necessary, and therefore meets the standard enunciated in *Poindexter II*, which defendants seek to apply in this case under dramatically different circumstances. *See* Tr. 08/02/02 Hr'g. at 19:1—19:3; *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 2002 WL 1483891 at \*31–32.

In the first *Poindexter* opinion, addressing subpoenas for a President's diaries and personal notes in a criminal prosecution, the District Court also did not, as defendants contend, require that the party seeking enforcement of the subpoena establish a "compelling need" for the documents before the subpoena could issue. *See Poindexter I*, 727 F.Supp. at 1507–08, 1509. Rather, proceeding expressly pursuant to the Federal Rules of Criminal Procedure, as it would with respect to any other request for a subpoena not involving the President, the court simply narrowed the scope of subpoenas "to eliminate demands that request documents defendant can obtain from other sources, that are unduly broad or oppressive, or that ask for documentary evidence that is clearly not material to the defense" before issuing them. *Id.* Where portions of the subpoenas were quashed, the *Poindexter I* court did so largely because the information requested was no longer in the President's possession, had already been provided to the defendant, or was available from other

sources. *Id.* at 1508–10. Where the defendant was unable to provide sufficient specificity to establish materiality of documents requested because the documents themselves were not available to him, the *Poindexter I* court conducted an *in camera* examination of the former President's diaries, notes, and notebooks to determine whether they contained relevant evidence which should be produced.[3] *Id.* at 1510.

The equivalent of this process has already occurred in this case, as demonstrated by the Court's July 11, 2002 Order and its evaluation of plaintiff's proposed discovery plan. *See Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group,* Civ. A. No. 01–1530 (D.D.C. Aug. 8, 2002) (Order approving plaintiffs' proposed discovery plan and setting forth discovery procedures); Tr. 08/02/02 Hr'g. at 19:1—19:3; *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group,* 2002 WL 1483891 at *31–32. In other words, this Court has already done essentially what the *Poindexter* court did: it has determined what precise discovery is both material and necessary to resolve the threshold issues presented in this case and subsequently approved it.

Where, as here, "other than their interpretation" of cases, and citation to cases the court has found to be inapposite, defendants "have offered little to support their desired result and they have not persuaded the Court that conflicting authority exists on the issue presented" as applied to the relevant facts, interlocutory appeal pursuant to § 1292(b) has been held to be unwarranted. *See First Am. Corp. v. Al–Nahyan,* 948 F.Supp. at 1117. Furthermore, "neither unusual facts nor legal issues of first impression require, or in this instance justify, certification of an interlocutory appeal." *Id.*

Moreover, in their motion for certification, defendants persist in conflating within the term "discovery" the notion of requiring production of documents and the far less drastic result of this Court's Orders, which simply require that defendants produce non-privileged documents and make particularized assertions of privilege where appropriate. *See Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group,* 230 F.Supp.2d 12, 15 (D.D.C.2002); *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group,* Civ. A. No. 01–1530 (D.D.C. Oct. 17, 2002) (Order denying motion for protective order); *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group,* Civ. A. No. 01–1530 (D.D.C. Aug. 8, 2002) (Order approving plaintiffs' proposed discovery plan and setting forth discovery procedures). Compliance with the Court's Orders will not necessarily result in plaintiffs "obtaining" *any* discovery, as it is entirely conceivable that defendants could assert specific viable claims of privilege for every responsive document or category of documents. Only then would the question defendants seek to certify for interlocutory appeal, whether discovery should be pro-

---

**3.** *In camera* inspection of documents to determine relevance and admissibility in a criminal prosecution *after* assertion of presidential privilege and presentation of sufficient evidence to rebut the presumption of privilege which attends such an assertion was approved by the U.S. Supreme Court in *United States v. Nixon,* 418 U.S. at 713–14, 94 S.Ct. 3090. This Circuit has approved *in camera* inspection of documents to determine the propriety of a President's assertions of executive privilege *after* they were made, as well as the relevance of the materials to grand jury proceedings. *Nixon v. Sirica,* 487 F.2d 700, 718–721 (D.C.Cir.1973). This Court has repeatedly offered defendants the option of offering responsive documents to the Court for *in camera* review, *prior to* assertion of any privilege with respect to the documents, thereby offering defendants exactly the same procedure followed by the *Poindexter II* court. Defendants have not accepted this proposal by the Court.

vided to plaintiffs without demonstrating "any need" for the documents requested, be ripe for judicial review.

This Court has already answered that question in the affirmative, in a manner consistent with existing authority, which establishes that the appropriate stage at which to require a party seeking discovery to demonstrate "need" arises only after the opposing party has asserted a privilege, even where that party is a member of the Executive Branch, up to and including the President of the United States. *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 219 F.Supp.2d at 49–50, *see also Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 2002 WL 31519674 at *3 (citing cases).

Therefore, by mischaracterizing the intent and effect of this Court's Orders, defendants have created a legal question, for which they now seek certification, where none exists. Where "it is only against a mischaracterization of the Court's holdings that the plaintiff can identify substantial ground for a difference of opinion," a motion to certify under § 1292(b) is properly denied. *See Foster v. United States*, 926 F.Supp. 199, 203 (D.D.C.1996).

Finally, this Court's discovery Orders would not require reversal if decided incorrectly, nor would such a finding materially alter the course of litigation. *See Johnson v. Burken*, 930 F.2d at 1206. The Eighth Circuit has held that "resolution of a discovery dispute does little to advance the ultimate termination of litigation and results only in delay." *White v. Nix*, 43 F.3d at 378–79 (reasoning that plaintiff would press his claim regardless of whether or not he obtained the files the court had ordered produced, potentially seeking to discover the same information through alternate means; "[w]hen litigation will be conducted in substantially the same manner regardless of our decision, the appeal cannot be said to materially advance the ultimate termination of the litigation."). None of the circumstances present in cases where interlocutory appeal has been justified on this ground exist here. *See, e.g., Johnson v. Wash. Metro Area Trans. Auth.*, 773 F.Supp. at 461 (resolution of an "apparent intra-circuit split" might negate the need for a jury trial). Conversely, untimely interlocutory appeal of orders can "prolong and substantially delay the litigation," causing all parties to incur greater expense, and thus do not "materially advance the litigation." *See In re Vitamins Antitrust Litigation*, 2000 WL 673936 at *3; *Brown v. Pro Football, Inc.* 812 F.Supp. 237, 239 (D.D.C.1992).

Defendants' contention that certification of this Court's Orders for interlocutory appeal will materially advance this litigation necessarily assumes that they will prevail on appeal. This result is far from certain. As noted by one District Judge, "[w]hile certainly the ultimate termination of this litigation would be advanced if the Court of Appeals heard and sustained defendant's defense at this time, the court is not of the opinion that this is a likely course of events. Therefore, the court will not invoke its discretionary authority to certify the issues decided in [its] Order to the Court of Appeals under section 1292(b)." *U.S. ex rel Hollander*, 420 F.Supp. at 859; *see Nix*, 43 F.3d at 378–79.

Defendants also assume that a ruling in their favor on all three issues at the Circuit level will result in dismissal of the action as to them, or at least relieve them of the burden of participating in discovery. However, a number of substantive questions were left unresolved by this Court's July 11, 2002 Order which would require further litigation before this Court, with or without the benefit of discovery of non-agency defendants. *See* Tr. 11/13/02 Hr'g. at 33:23–24. In fact, a ruling favorable to

the defendants on this issue could conceivably result in more arduous proceedings for all parties, as the Court and the parties struggle to find other ways of establishing whether or not the predicate facts for the application of FACA exist, and moving this litigation forward. Accordingly, defendants have not carried their burden of demonstrating that interlocutory appeal of this question at this point in time would materially advance the litigation as a whole.

D. *Availability of discovery in action pursuant to the APA or* mandamus *statutes*

The third question defendants seek to certify for interlocutory appeal concerns the availability of discovery under the APA or the federal *mandamus* statute. Defendants contend that it is "well settled" that judicial review pursuant to the APA must be limited to the administrative record absent "exceptional circumstances," which only arise upon a "strong showing of bad faith or improper behavior" or "when the record is so bare that it prevents effective judicial review." Defs.' Mot. at 6, 8; Defs.' Reply at 6, citing *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C.Cir.1998). They further hypothesize, citing only to their own arguments in objection to the plaintiffs' proposed discovery plan, that the scope of discovery in a *mandamus* action should be no greater than that permitted under the APA. *See* Defs.' Mot. at 6, Defs.' Reply at 6.

The question of the scope of permissible discovery in a *mandamus* or APA action is not controlling, and its resolution will not materially advance this litigation. As plaintiff Sierra Club correctly points out, if this Court has reached an incorrect conclusion under either the *mandamus* statute or the APA with respect to the propriety of limited discovery this case, then the Court of Appeals is free, upon review of

final judgment, to make its ruling on the APA record alone, or to remand to this Court for such a review of plaintiffs' claims. Additionally, as defendants have repeatedly stated, agency defendants, who are the only defendants against whom discovery was sought under the APA, have already provided plaintiffs with discovery, thereby rendering the question moot for purposes of interlocutory appeal. *See* Tr. 11/13/02 Hr'g. at 32:24—33:2.

Moreover, with respect to the proper scope of discovery in a *mandamus* action, defendants' citation to their own arguments, without more, is simply insufficient to create the requisite "substantial ground for difference of opinion" on this issue. A litigant cannot create a "substantial ground for difference of opinion" justifying interlocutory appeal simply by arguing for a particular interpretation or extension of existing law. Furthermore, as defendants themselves concede, what authority they do rely on with respect to this question actually suggests that, under certain circumstances, discovery is appropriate in a *mandamus* action. *See* Defs.' Objections to Plaintiffs' Proposed Discovery Plan at 9 n. 6, citing *Conservation Law Foundation of New England, Inc. v. Clark*, 590 F.Supp. 1467, 1472–73 (D.Mass.1984) ("Courts have indicated that independent fact finding under mandamus is appropriate in some circumstances even where agency action is under review."). Although discovery in a *mandamus* action may not be appropriate where the statute governing agency action provides significant discretion, or where relevant regulatory issues are particularly within the agency's competence and expertise, courts have found discovery to be appropriate where an agency has either completely abrogated its enforcement responsibilities or acted clearly outside the bounds of relevant statutes. *Id.* at 1473 (citing cases). None of these factors counseling either for

or against discovery in a *mandamus* action are necessarily present in the current case. However, both the contemplated review of agency action and the "record" in this case are decidedly unconventional. This Court has identified compelling reasons in favor of allowing tightly reined discovery on threshold issues, which, in light of the absence of authority holding such discovery unavailable, it deems sufficient to justify the discovery contemplated by the Orders here challenged. *See Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 219 F.Supp.2d at 53–55.

As for the proper scope of discovery in an APA action, this Court has impliedly held that this case does in fact present the type of "exceptional circumstances" in which discovery beyond the administrative record is required to assist the Court in adjudicating the questions before it. *See Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 219 F.Supp.2d at 45–46 (stating that defendants' argument that no further factual development is required "flies in the face of the precedent that has developed separation of powers doctrine as a fact-intensive, case-by-case analysis of the specific nature of the intrusion into the President's performance of his constitutional duties."); Tr. 08/02/02 Hr'g. at 19:1—19:11. This Court has already concluded that, in light of the delicate balancing of constitutional concerns required of the Court in this case, more information than is contained in the scant administrative record currently available, which consists in its entirety of the President's memorandum to the Vice–President establishing the NEPDG, the NEPDG's final report, and the affidavit of the NEPDG's former Deputy Director, is necessary to resolve the question of whether and how FACA is applicable to the NEPDG. *See Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 2002 WL 1483891 at *31–32.

This conclusion is not inconsistent with the precedent cited by defendants in support of their contention that, as a general rule, no discovery beyond the administrative record should be permitted in an APA case. *See* Defs.' Mot. at 8, Defs.' Reply at 6. The facts of the case currently before this Court most certainly do not present circumstances analogous to those present in the APA cases cited by defendants, in which an agency's adjudicative or legislative processes were the subject of judicial review. *See, e.g., Camp v. Pitts*, 411 U.S. 138, 141–142, 93 S.Ct. 1241, 1243–44, 36 L.Ed.2d 106 (1973) (adjudicative process); *Marshall Co. Health Care v. Shalala*, 988 F.2d 1221, 1226–27 (D.C.Cir.1993) (rulemaking); *see also Conservation Law Foundation of New England, Inc.*, 590 F.Supp. at 1474–75 (recognizing, in the context of rulemaking, a number of exceptions to the general rule that a court's inquiry in administrative review cases is "confined to the full record before the agency at the time the decision is made"); *see also* Tr. 08/02/02 Hr'g. at 13:16—14:25. Additionally, this Court has already concluded that the administrative record here is "so bare that it prevents effective judicial review." *See* Tr. 08/02/02 Hr'g. at 19:1—19:3; *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 219 F.Supp.2d at 54 ("it would be inappropriate for this Court to conduct the fact-intensive inquiry demanded by separation of powers precedent by considering only the Presidential Memorandum that established the NEPDG."); *see also Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C.Cir.1998); *Conservation Law Foundation of New England, Inc.*, 590 F.Supp. at 1474–75 (most exceptions to the rule confining APA review to the record before the agency "involve instances where the record submitted by the agency is self-serving, incomplete or unclear."). Therefore, this Court has found, consistent

with controlling and persuasive precedent, that circumstances exist in this case warranting limited discovery into matters outside the scant administrative record.

In light of the foregoing, it is clear that defendants have failed to carry their burden of establishing the existence of a "controlling question of law" as to which there is a "substantial ground for difference of opinion" with respect to the permissible scope of discovery under the federal *mandamus* statute or the APA. At most, they have argued for a different application of the law to the facts before the Court, and specifically for application of the general rule rather than the permissible exception. Defendants can advance such arguments on appeal after final judgment, but they have not established the basis for doing so at this time under § 1292(b).

With respect to all three questions for which they seek certification, defendants have not met their burden of establishing that exceptional circumstances justifying interlocutory appeal exist under the standard set forth by § 1292(b). Defendants have, throughout this litigation, zealously advocated in favor of, at best, a different interpretation, and at most, a dramatic extension of existing precedent with respect to each of the three legal questions they seek to certify. However, defendants' conviction of the correctness of their position is insufficient to carry them over the high threshold posed by the standard governing certification for interlocutory appeal. Defendants have simply failed to establish the factual and legal predicates justifying interlocutory review pursuant to § 1292(b).

Accordingly, it is by the Court hereby

**ORDERED** that defendants' motion for certification of interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is hereby **DENIED**.